**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Willie KINCAIDE (96–1771), Christian R. Key (96–1915), Keith Elbert Riley (96–1772), Defendants–Appellants.**

Nos. 96–1771, 96–1772 and 96–1915.

United States Court of Appeals,
Sixth Circuit.

Argued March 19, 1998.

Decided May 21, 1998.

Rehearing and Suggestion for Rehearing
En Banc Denied in No. 96–1915
July 20, 1998.

Melvin Houston (argued and briefed), Detroit, MI, Willie Kincaide, Leavenworth, KS, for Defendant–Appellant Willie Kincaide.

Keith M. Nathanson (argued and briefed), Nathanson & Nathanson, Farmington Hills, MI, Keith Elbert Riley, Detroit, MI, for Defendant–Appellant Keith Elbert Riley.

Kevin M. Schad (argued and briefed), Schad, Buda, Lucia & Cook, Cincinnati, OH, Christian R. Key (briefed), Otisville, KY, for Defendant–Appellant Christian R. Key.

David Debold (argued and briefed), Amy B. Hartmann, Office of the U.S. Attorney, Detroit, MI, for Plaintiff–Appellee.

Before: KENNEDY, WELLFORD, and SILER, Circuit Judges.

## OPINION

KENNEDY, Circuit Judge.

Defendants Willie Kincaide, Christian Key, and Keith Riley were convicted on various counts of a nine-count indictment that a grand jury returned against thirteen alleged participants in a drug distribution ring. Count one of the indictment charged Kincaide, Key, and Riley under 21 U.S.C. §§ 841(a)(1) and 846 with conspiring to possess with intent to distribute and to distribute heroin, cocaine, and cocaine base from July 1, 1994 through December 14, 1994. Count two charged Kincaide with possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting under 18 U.S.C. § 2. Count five charged Key under 21 U.S.C. § 841(a)(1) with possessing seven kilograms of cocaine with the intent to distribute and under 18 U.S.C. § 2 with aiding and abetting. Count six charged Key and Riley with the possession of heroin with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting under 18 U.S.C. § 2. Count Eight charged Key and Riley under 18 U.S.C. § 922(g)(1) as felons in possession of firearms. Finally, count nine charged Kincaide with possessing a firearm while he was a fugitive from justice, in violation of 18 U.S.C. § 922(g)(2). After a jury trial in the United States District Court for the Eastern District of Michigan, defendants were convicted of various offenses. Each defendant alleges that the District Court committed errors that require reversal of his convictions, and defendants Key and Riley also contest the validity of their sentences. For the reasons that follow,

we affirm the convictions and sentences of each of the defendants.

## I. Facts

In the middle of 1994, acting on a tip from a confidential informant, agents of the Federal Bureau of Investigation (FBI) in Detroit began investigating one Kevin Hill for narcotics activities. The FBI agents made controlled purchases of drugs from Hill, placed him under surveillance, and placed pen registers on his telephone. The FBI then received judicial authorization to place a wiretap on Hill's phone and tape record conversations relating to the distribution of narcotics. Investigators identified others suspected of participating in the distribution of cocaine and heroin in Detroit and received authorization for additional wiretaps. These suspects included defendants Kincaide, Key, and Riley, as well as Harlan Gibbs and defendant Kincaide's brother Sam Kincaide.

The defendants' heroin and cocaine distribution organization worked as follows. Gibbs and defendant Kincaide operated crack and heroin distribution houses on Detroit's east side and employed Kevin Hill and Sam Kincaide to handle their daily operations. In June and July of 1994, Gibbs and defendant Kincaide began working with defendant Key, who had connections with a cocaine and heroin supplier in the New York City area. Gibbs, Kincaide, and Key became partners, and Gibbs accompanied Key on at least eight supply trips to New York City. Sometimes defendant Kincaide also went, and at least once defendant Riley accompanied them. Key traveled to New York in his GMC Jimmy, which had a secret compartment under the floorboards of the driver's side that his suppliers installed to hide drugs and money. Defendant Riley served as defendant Key's lieutenant. They worked out of an apartment that Riley rented on East Larned in Detroit (the "East Larned apartment"). Upon returning to Detroit, Key stashed the powder cocaine until it was delivered to Gibbs and Kincaide, who then oversaw the production and distribution of cocaine base. Riley and Key processed the uncut heroin and delivered bundles of the packaged of

heroin to Gibbs for distribution. Sometimes Key was alone when he delivered the drugs to Gibbs, often he was accompanied by Riley, and at least once, Riley delivered the heroin to Gibbs by himself.

On November 15, 1994, Key and Gibbs left Detroit with seven kilograms of defective cocaine stashed in the secret compartment of Key's GMC Jimmy. They drove to New York, exchanged the unsaleable cocaine for seven kilograms of higher quality cocaine, and returned to Detroit at approximately 5:00 a.m. on November 17. Around 8:00 that morning, FBI agent Larry Kuhl saw Key's truck outside the East Larned apartment and took up a position from which he could see the apartment building and the truck. Riley and Key emerged from the building, and Riley got in a van and left. Key moved the GMC Jimmy from the rear of the parking lot to a spot within sight of the apartment and returned inside.

Kuhl, knowing that a search warrant for the East Larned apartment had already been obtained, summoned a search team. At approximately 10:30 a.m., a team of law enforcement agents conducted a warrant-based search of the apartment. Along with defendant Key, the search team found the following evidence: eighty-eight packets of heroin; powder cocaine; a bag full of ammunition; a loaded Smith & Wesson .357 revolver adjacent to the couch; a 9 millimeter semi-automatic pistol in plain view on the floor of the kitchen; a loaded .22 caliber rifle in a living room closet; a loaded .380 handgun in a bedroom closet; thousands of dollars in cash; chemicals used to cut heroin; surgical masks and gloves; packaging envelopes; and a triple beam scale. Meanwhile, Agent Kuhl noticed what appeared to be a secret compartment on the exterior of the GMC Jimmy's undercarriage below the driver's seat. The FBI impounded the vehicle, and an inventory search revealed approximately seven kilograms of powdered cocaine in the secret compartment.

On May 23, 1995, a grand jury in the Eastern District of Michigan returned a nine-count indictment against thirteen people, including Key, Kincaide, Riley, and Gibbs. Gibbs entered into a plea agreement

and testified at the jury trial of defendants Key, Kincaide, and Riley. Despite the warnings of the District Court, defendants Key and Kincaide waived their rights to counsel and elected to represent themselves. On February 20, 1996, after a joint trial that lasted five weeks, the jury convicted Key and Kincaide of all of the charges against each of them. It convicted Riley of the drug conspiracy charge and the charge of being a felon in possession of a weapon, but acquitted him of possessing heroin with an intent to distribute.

The District Court sentenced Riley to 200 months' imprisonment on the drug conspiracy charge and to a concurrent 120 month sentence on the charge of possession of a weapon by a felon. Kincaide was sentenced to imprisonment for life on the drug conspiracy count, to a concurrent term of forty years' imprisonment on the heroin possession count, and to a concurrent term of ten years' imprisonment on the fugitive in possession of a firearm count. Key received concurrent 360–month prison terms on the drug conspiracy and possession charges and a concurrent 120–month term of imprisonment on the charge of possession of a weapon by a felon. All three defendants filed timely notices of appeal, and we have jurisdiction under 28 U.S.C. § 1291.

## II. Discussion

This case presents the following issues: (1) each defendant argues that the District Court erred in admitting the tape recordings made during the government's wiretap investigation; (2) defendant Key challenges the District Court's denial of his motion to suppress the evidence gathered in the searches of the East Larned apartment and his automobile; (3) defendant Kincaide challenges the District Court's denial of his discovery motion; (4) defendants Key and Riley argue that the District Court erred when it denied their pre-trial motions to be tried separately and failed to order a mistrial; (5) defendant Riley alleges that there was insufficient evidence to support his conviction on the drug conspiracy charge; (6) defendant Key attacks his conviction of being a felon in possession of a firearm; (7) defendant Kincaide argues that the District Court erroneously admitted evidence of violent and fraudulent acts committed by Kincaide and other members of his organization; (8) defendants Key and Riley assert that the District Court committed errors in its calculation of their sentences; and (9) Riley and Kincaide raise ineffective assistance of counsel claims. We consider these claims in turn.

### A. Wiretap Evidence

■ All three defendants argue that the District Court committed error when it admitted tape recordings of telephone conversations that the Government intercepted pursuant to judicial authorization under 18 U.S.C. § 2518. They argue that the manner in which the tape recordings were sealed did not comply with the requirements set forth in 18 U.S.C. § 2518(8)(a). In addition, defendant Key argues that the District Court abused its discretion by failing to consider the merits of his pretrial motion to suppress these tapes, thereby denying him the opportunity to raise several challenges to the wiretap recordings. We review the decision to admit tape recordings or composite tapes at trial for an abuse of discretion. *See, e.g., United States v. Scarborough,* 43 F.3d 1021, 1024 (6th Cir.1994).

### 1. Compliance with 18 U.S.C. § 2518(8)(a)

■ Defendants' claim that the procedures the Government employed to seal the tapes did not comply with the requirements of 18 U.S.C. § 2518(8)(a) is without merit.[1] Law

---

1. 18 U.S.C. § 2518(8)(a) provides, in pertinent part, as follows:

Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the

enforcement agents placed the individual tapes in evidence envelopes that were sealed, dated, and initialed at the end of each day. At the end of the investigation these envelopes were then sealed in a box, which was sealed in a cabinet pursuant to a court order. Defendants argue that the tapes should have been sealed in the presence of the authorizing judge. "[N]othing in the language of § 2518(8)(a) . . . requires the presence of the judge as the sealing of the recordings takes place." *United States v. Abraham*, 541 F.2d 624, 627 (6th Cir.1976). The statute only requires that the tapes be made available to the judge, and that they be sealed according to his directions. The tapes in this case were sealed in accordance with the judge's orders, and we conclude that the sealing of the tapes in this case complied with § 2518(8)(a).

### 2. Defendant Key's Wiretap Motion

On appeal defendant Key argues that the District Court's refusal to entertain his untimely motion to suppress the wiretap evidence prevented him from raising several challenges to the evidence. We are precluded from reaching the merits of these challenges on appeal. In *United States v. Obiuk-wu*, 17 F.3d 816 (6th Cir.1994), we explained that "Rule 12(f) [of the Federal Rules of Criminal Procedure] provides that failure to make a pre-trial motion before the motion cut-off date set by the court 'shall constitute waiver' of the motion, unless the court, 'for cause shown . . . grant[s] relief from the waiver.'" *Id.* at 819 (omission and second alteration in the original). The District Court explicitly refused to grant relief in this case, and defendant has waived his right to raise on appeal the issues contained in his untimely motion to suppress.

Defendant Key asserts on appeal that the District Court compromised his rights by refusing to allow him extra time to file a motion to suppress the wiretap evidence when the District Court knew that the Key

had been having trouble gaining access to a law library. We have held on several occasions that "the state does not have to provide access to a law library to defendants in criminal trials who wish to represent themselves." *United States v. Smith*, 907 F.2d 42, 45 (6th Cir.1990); *see also United States v. Sammons*, 918 F.2d 592, 602 (6th Cir.1990) (explaining that offer of court appointed counsel satisfies constitutional obligation to provide legal assistance). Defendant Key knowingly and intelligently waived his right to counsel, and the Court was not required to provide him with access to a law library. In this case, the District Court went out of its way to ensure that Key had adequate access to a law library to research his pretrial motions, and Key is not exempt from the rule that an untimely motion to suppress fails to preserve for appeal any issues contained therein. We conclude that the District Court did not abuse its discretion in its handling of the wiretap evidence.

### B. Defendant Key's Motion to Suppress

In a timely pretrial motion, defendant Key sought to suppress the evidence that law enforcement agents gathered in their warrant-based search of the East Larned apartment and in their inventory search of defendant Key's GMC Jimmy. At the suppression hearing, Key challenged the portion of the affidavit supporting the search warrant that stated that he was a resident of the East Larned apartment. He then argued that the police lacked probable cause to search his automobile.

With respect to the apartment search, the District Court first ruled that "defendant cannot establish standing to challenge the validity of the search warrant" because he argued that he did not reside in the apartment that was searched. The court, however, also ruled on the merits of defendant Key's challenge, holding that the search warrant was supported by probable cause.[2] The

---

absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517.

**2.** The District Court reasoned in the alternative that if probable cause were absent, then the good faith exception to the exclusionary rule under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), would provide an a third basis for denying Key's motion to suppress evidence from the apartment.

District Court also denied Key's motion with respect to the car search, finding that the law enforcement agents had probable cause to conduct a preforfeiture inventory search of the vehicle, and that the search was also valid under the automobile exception to the warrant requirement.

 In considering a district court's denial of a motion to suppress, we review its conclusions of law and application of the law to the facts, such as its finding of probable cause, de novo. *See, e.g., United States v. Pasquarille,* 20 F.3d 682, 685 (6th Cir.1994). We must affirm the lower court's denial of a motion to suppress "if the district court's conclusion can be justified for any reason." *Id.*

 We believe that defendant Key had a legitimate expectation of privacy in the East Larned apartment and, therefore, had standing to contest its search. *See Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). Turning to the merits of Key's challenge, we affirm the District Court's conclusion that the warrant authorizing the search was supported by probable cause. A United States Magistrate Judge issued the search warrant for the apartment based on the eighteen-page affidavit of Special Agent Lintner. The Supreme Court explained in *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), "that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." Because "the possession of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct," reviewing courts should pay great deference to a magistrate's determination of probable cause. *Id.* Therefore, the Supreme Court reaffirmed that an issuing magistrate's determination "should be upheld so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing." *Id.* (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)) (alteration and omission in the original). The affidavit in this case reported that intercepted telephone calls and surveillance indicated that defendants conducted a portion of their drug trafficking activities from the East Larned apartment. It provided the magistrate with a substantial basis for concluding that the search of that apartment would uncover evidence of narcotics trafficking. Therefore, we affirm the District Court's denial of Key's motion to suppress evidence seized from that apartment.

 Defendant Key's argument that the District Court should have suppressed the evidence seized from his car is also without merit. It is well established that "police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo,* 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); *accord Pasquarille,* 20 F.3d at 690; *United States v. Mans,* 999 F.2d 966, 969 (6th Cir.1993). If police officers have probable cause, they may conduct a warrantless search of the vehicle, "even after it has been impounded and is in police custody." *Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982).

 Probable cause is determined under the totality of the circumstances. *Illinois v. Gates,* 462 U.S. at 238, 103 S.Ct. 2317. In the instant case, investigators knew that Key had been planning a trip in his vehicle around November 15, 1995 to New York, where he would exchange seven kilograms of defective cocaine for a new supply. After losing surveillance of Key and Gibbs on November 15, FBI agent Kuhl observed Key emerging from the East Larned apartment with Riley on November 17. Key moved the vehicle to a position in the parking lot where it could be viewed from the apartment and returned inside. The apartment was strewn with evidence of drug trafficking, but the seven kilograms of cocaine were missing. Agent Kuhl recognized a secret compartment in the undercarriage of Key's vehicle, and knew from experience that such compartments were used to transport drugs and money. These circumstances supplied the police with probable cause to believe that the GMC Jimmy contained either contraband or evidence. We therefore affirm the District Court's denial of Key's motion to suppress

the seven kilograms of cocaine discovered in the vehicle's secret compartment.

### C. Kincaide's Discovery Motion

 On appeal, defendant Kincaide challenges the District Court's refusal to require the Government to respond to a set of interrogatories that he had served on the prosecution. We review the District Court's order on a discovery motion in a criminal case for an abuse of discretion. *United States v. Phillip*, 948 F.2d 241, 250 (6th Cir.1991). The District Court was clearly within the bounds of its discretion when it denied defendant Kincaide's request for discovery. Kincaide filed this request for discovery after the cut-off date for pretrial motions, and the interrogatories sought information on the history of slavery in the United States, an issue that was not relevant to this case. The District Court did not abuse its discretion in denying Kincaide's request for discovery.

### D. Defendants Riley's and Key's Challenges to Their Joint Trial

 Defendants Riley and Key assert that they were denied a fair trial because they were tried together with Defendant Kincaide. Both defendants Riley and Key submitted pre-trial motions for separate trials and argue on appeal the District Court erred in its decision to deny them. We review the District Court's decision for plain error because Riley and Key failed to renew their motions at the close of evidence.[3] *See United States v. Anderson*, 89 F.3d 1306, 1312 (6th Cir.1996). Under the plain error analysis, we will only "correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (alteration in original) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)).

 Persons indicted together ordinarily should be tried together because "there is almost always common evidence against the joined defendants that allows for the economy of a single trial." *United States v. Phibbs*, 999 F.2d 1053, 1067 (6th Cir.1993). Therefore, "when defendants properly have been joined ..., a district court should grant a severance under Rule 14 [of the Federal Rules of Criminal Procedure] only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

In the instant case, both Key and Riley argue that the District Court should have predicted that defendant Kincaide's self-representation would cause disturbances at trial, and that these disturbances would cause them irreparable prejudice. In addition, Key argues that he was prejudiced by evidence of Kincaide's violent and deceptive conduct that was not relevant to his case. Their arguments are without merit. The indictment charged that defendants Key, Riley, and Kincaide conspired to distribute drugs and the record shows no evidence that could have caused impermissible prejudice and warranted separate trials. Although Kincaide conducted a rather bizarre cross-examination of Agent Lintner that resulted in the revocation of his self-representation, there was nothing inherently prejudicial in the content of his cross-examination. The District Court instructed the jury that the decision to revoke Kincaide's right of self-representation "should not be considered by you as evidence of any kind and should not influence your decision in any way." The District Court committed no error when it denied Key's and Riley's motions for separate trials.

 Key also challenges the failure of the District Court to grant a mistrial when it decided to terminate defendant Kincaide's self-representation. At trial, defendant Kincaide attempted to question Special Agent Lintner about examples of racism in United States history. After repeated objections to Kincaide's line of questioning, the court ex-

---

3. FED.R.CRIM.P. 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

cused the jury and heard arguments regarding whether Kincaide should continue to represent himself. During this hearing, Kincaide had several vituperative outbursts and showed utter disrespect for the District Court. Before adjourning for the day, the District Court expressed concern that Kincaide's conduct could have a negative effect on his co-defendants' cases and indicated that it would reluctantly grant a motion for a mistrial from either defendant Key or Riley. The next morning, it decided to terminate Kincaide's self representation. Neither Key nor Riley moved for a mistrial: defendant Key told the court that he thought Kincaide should be allowed to represent himself, and Riley's counsel supplied the court with a curative instruction explaining that the jury should not consider the change in Kincaide's representation as evidence of wrongdoing by any of the defendants.

At closing arguments, Kincaide had another outburst, this time in front of the jury. The District Court quickly dismissed the jury and excused defendant Kincaide from the courtroom for the remainder of the day. When the jury returned, the court explained that Kincaide would watch the remainder of the proceedings from a different room via simultaneous broadcast. The District Court also instructed the jury that "anything that you have heard or any of this action must not be considered by you in any way in making your decision of the guilt or innocence of any one of the three defendants."

▮▮▮▮ Because defendant Key chose not to make a motion for a mistrial, we review the District Court's failure to grant a mistrial for plain error. *See United States v. Cunningham*, 804 F.2d 58, 63–64 (6th Cir.1986). "As a general rule, a cautionary instruction advising the jury not to allow a disruptive co-defendant's behavior to [have an] impact [on] the decision regarding the other defendants affords sufficient protection against undue prejudice." *United States v. Koskela*, 86 F.3d 122, 125 (8th Cir.1996). The court's instruction to the jury sufficed to cure any prejudice that might have occurred as a result of defendant Kincaide's conduct. Moreover, a defendant has a "valued right to have his trial completed by a particular tribunal."

*Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949); *accord Harpster v. Ohio*, 128 F.3d 322 (6th Cir.1997), *cert. denied*, — U.S. —, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998). Therefore, in a case where a defendant does not move for a mistrial but one is granted, double jeopardy bars the retrial of the defendant unless the court granting the mistrial had manifest necessity. The Supreme Court has interpreted this standard to "require a 'high degree' [of necessity] before concluding that a mistrial is appropriate." *Arizona v. Washington*, 434 U.S. 497, 506, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). We find no error in the District Court's failure to order a mistrial.

### E. Sufficiency of the Evidence Supporting Riley's Conspiracy Conviction

▮▮▮▮ Defendant Riley challenges the sufficiency of the evidence supporting his conviction on count one of the indictment, which charged him under 21 U.S.C. §§ 841(a)(1) and 846 with conspiring to distribute controlled substances and to possess controlled substances with the intent to distribute. Under *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), we review Riley's challenge to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." To prove guilt on the drug conspiracy charge, the Government bore the burden of proving "the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join, and participated in the conspiracy." *United States v. Lee*, 991 F.2d 343, 348 (6th Cir.1993). "Moreover, once the existence of a conspiracy has been proven, only slight evidence is necessary to implicate a defendant." *Id.*

Defendant Riley argues that the Government failed to prove that he joined the conspiracy in this case. His argument fails. The evidence at trial included testimony from co-conspirator Harlan Gibbs that Riley worked within Key's organization by processing and delivering heroin. Wiretap evidence

corroborated Riley's participation in the conspiracy. Riley rented the East Larned apartment from which Key and Riley ran their portion of the drug processing and distribution operation. In sum, there was more than enough evidence for a rational juror to conclude that Riley knew of, intended to join, and participated in the drug conspiracy.

### F. Defendant Key's Conviction under 18 U.S.C. § 922(g)

On appeal, defendant Key raises two challenges to his conviction of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Key first attacks the sufficiency of the evidence supporting his conviction. He then argues that the guilty verdict must be reversed because he was prejudiced when the District Court admitted Key's stipulation to the nature of his prior felony conviction. We consider these claims in turn.

#### 1. Sufficiency of the Evidence

■■■ We review this challenge to the sufficiency of the evidence with the standard of review outlined in the previous section. In order to convict under § 922(g)(1), the Government must prove the following three elements: " '(1) that the defendant had a previous felony conviction, (2) that the defendant possessed a firearm, and (3) that the firearm had traveled in or affected interstate commerce.' " *United States v. Moreno*, 933 F.2d 362, 372 n. 1 (6th Cir.1991) (quoting *United States v. Petitjean*, 883 F.2d 1341, 1347 (7th Cir.1989)). Defendant Key challenges only the sufficiency of the evidence that he possessed a firearm. Evidence of constructive possession suffices to satisfy the requirement under § 922(g)(1) of proof that a defendant possessed a firearm. *Moreno*, 933 F.2d at 373. "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir.1973). Proof that "the person has dominion over the

premises where the firearm is located" is sufficient to establish constructive possession. *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir.1993) (per curiam); *accord United States v. Snyder*, 913 F.2d 300, 304 (6th Cir.1990).

The evidence at trial was sufficient to prove that Key had constructive possession of the weapons that were discovered in the East Larned apartment when he was arrested. Gibbs testified at trial that Key and Riley used the East Larned apartment to process heroin and stash cocaine. Gibbs' testimony was corroborated by the physical evidence seized when Key was found alone in the apartment. Drawing all reasonable inferences in favor of the government, we find that there was enough evidence for a rational juror to conclude that Key had dominion over the apartment and its firearms when he was arrested.

#### 2. Key's Stipulation to the Nature of his Prior Felony Conviction

■■■ At trial, defendant Key stipulated that he had a prior conviction on a felony drug charge. The Government read this stipulation to the jury as the proof of a prior conviction required under 18 U.S.C. § 922(g)(1). Relying entirely on the Supreme Court's recent opinion in *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), Key argues that the District Court erred when it accepted his stipulation.

In *Old Chief,* a defendant charged with violating 18 U.S.C. § 922(g)(1) unsuccessfully attempted to stipulate to his status as a convicted felon and objected at trial when the Government introduced the order of judgment and conviction that disclosed the nature of his prior felony. The Ninth Circuit affirmed his conviction, and the Supreme Court granted certiorari to determine whether the district court abused its discretion when it denied the defendant's attempt to exclude evidence of the name and nature of his prior offense under Rule 403 of the Federal Rules of Evidence.[4] The Court held that when

---

**4.** In pertinent part, Rule 403 authorizes the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid 403.

the prior conviction is for an offense likely to support conviction on some improper ground, the only reasonable conclusion was that the risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction, and it was an abuse of discretion to admit the record when an admission was available. 117 S.Ct. at 655. In a footnote, the Court explained that "there may be ... other means of proof besides a formal admission on the record that, *with a proper objection,* will obligate a district court to exclude evidence of the name of the offense." *Id.* at 655 n. 10 (emphasis added). Thus, the district court's abuse of discretion was its denial of the defendant's attempts to stipulate only to his status as a felon and to exclude evidence of the nature of his prior conviction from the record.

In contrast to *Old Chief,* defendant Key willingly stipulated to the name and nature of his prior conviction and did not object when the Government presented this evidence to the jury. Because Key did not present the District Court with an alternative to admitting the nature of his prior conviction into evidence, this case does not conflict with the rule of *Old Chief.* The District Court did not abuse its discretion by allowing the Government to present the contents of defendant Key's stipulation to the jury.

### G. Evidence of Violent and Fraudulent Acts

 Defendant Kincaide argues on appeal that the District Court erroneously admitted evidence concerning violent and deceptive conduct by himself and other members of his drug distribution organization. He argues that this evidence was not relevant to his role in the conspiracy and should have been excluded under Rule 403 of the Federal Rules of Evidence. Because Kincaide did not voice these objections at trial, we review the admission of this evidence for plain error. *See, e.g., United States v. Leal,* 75 F.3d 219, 224 (6th Cir.1996).

The contested evidence of violent conduct consisted of testimony by co-conspirator Orlando Mathis that Kincaide directed him to participate in the fire bombing of a house and that defendant Kincaide became enraged when his brother Sam Kincaide shot at someone during a squabble in a crack house. As a result of the second incident, the organization lost control of that crack house and defendant Kincaide assigned Mathis to keep an eye on his brother. The challenged evidence of fraudulent conduct consisted of Agent Lintner's interpretation of an intercepted telephone conversation during which defendant Kincaide was audibly upset because he had been stopped in an automobile that he obtained with false papers and had to provide the state trooper with false identification in order to avoid arrest.

 Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Courts have regularly upheld the relevancy of evidence of violent acts that exemplify the conspiracy's pattern of conduct. *See, e.g., United States v. Baker,* 10 F.3d 1374, 1413 (9th Cir.1993); *United States v. Patterson,* 819 F.2d 1495, 1505 (9th Cir.1987); *United States v. Meester,* 762 F.2d 867, 874–75 (11th Cir.1985). The use of fraudulent identification also is relevant evidence of a conspiracy's methods of operations. *See United States v. Wilson,* 11 F.3d 346, 353 (2d Cir. 1993) (finding false identification relevant and admissible as evidence of means used to conduct conspiracy). In the instant case, the evidence of violent and fraudulent conduct was relevant the Government's proof of count one of the indictment, which alleged that Kincaide and other members of the conspiracy "would and did obtain false and identification and fraudulent vehicle registrations to avoid detection by law enforcement," and that "various members of this conspiracy ... would enforce the goals of the conspiracy through threats of violence and intimidation."

 This evidence was admissible under Rule 403, which allows relevant evidence to be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue

delay, waste of time, or needless presentation of cumulative evidence." The contested evidence had great probative value; it showed the means Kincaide used to manage his drug distribution organization. This evidence did portray Kincaide in a negative light, but this does not make it impermissibly prejudicial. "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir.1993) (internal quotation marks omitted). In this case, this evidence tended to prove Kincaide's guilt of conspiracy as it was charged in the indictment but did not suggest an improper basis for conviction. Therefore, we find no error in the admission of this evidence.

### H. Defendant Key's and Riley's Sentences

Defendants Key and Riley argue on appeal that the District Court incorrectly calculated their sentences. We consider their challenges in turn.

### 1. Defendant Key's Sentence

■■■■ Defendant Key argues that the District Court incorrectly enhanced his sentence by two levels under USSG § 2D1.1(b)(1) for the possession of a firearm during a drug distribution offense. He asserts that there was insufficient evidence to prove the required nexus between the weapons found in the East Larned apartment and the drug offenses charged in this case. We review the District Court's finding that an enhancement was warranted under § 2D1.1 for clear error. *United States v. Elder,* 90 F.3d 1110, 1133 (6th Cir.1996).

■■■■ The two-level enhancement under § 2D1.1(b)(1) is warranted whenever the defendant possessed a dangerous weapon, including a firearm. Proof of possession is all that is required to trigger this enhancement; no evidence that the firearm was actually used or carried is necessary. The application notes for this section of the Guidelines provide the following guidance:

The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in his closet.

USSG § 2D1.1, comment. (n.3). In the present case, there was overwhelming evidence that the weapons and defendant Key were present in the apartment in connection with the drug offenses, and we affirm the two-level enhancement under § 2D1.1.

### 2. Defendant Riley's Sentence

■■■■ Defendant Riley argues that the District Court erred when it failed to make a factual finding of the specific amount of controlled substances attributable to him. He asks us to vacate his sentence and remand for determination of the amount of drugs for which he, as opposed to the conspiracy in general, should be held responsible.

The presentence report ("PSR") prepared for defendant Riley stated that "[t]he defendant is being held accountable for at least 5 kilograms of cocaine but less than 15 kilograms of cocaine, which results in a base offense level of 32." Riley filed no written objections to any of the calculations in the PSR. At the sentencing, Riley's counsel successfully argued against a statutory enhancement under 21 U.S.C. § 841, but all parties agreed that Riley was not challenging the calculation in the PSR that between five and fifteen kilograms of cocaine were attributed to Riley.

■■■■ When a defendant fails to object to an error at sentencing, he forfeits his right to raise that error on appeal. *See, e.g., United States v. Dobish,* 102 F.3d 760, 762 (6th Cir.1996) (per curiam); *United States v. Tosca,* 18 F.3d 1352, 1355 (6th Cir.1994). By failing to object to the PSR's calculation of the amount of drugs for which he was accountable, defendant has failed to preserve that issue for appeal.

## I. Ineffective Assistance of Counsel

On appeal, defendants Riley and Kincaide each assert for the first time that his Sixth Amendment right to effective assistance of counsel was violated in the course of his trial. Defendant Riley argues that his counsel provided ineffective assistance by failing to move for a mistrial after Defendant Kincaide's bizarre conduct prompted the District Court to state that it would be receptive to a mistrial motion. Riley also finds fault in his counsel's decision to stipulate to the name and nature of his prior felony conviction. Kincaide argues that his appointed counsel was ineffective because he rested without calling any of the witnesses that Kincaide would have called on his own behalf.

Unless the record on appeal is adequate to assess the merits of the defendants' allegations, we will not address an ineffective assistance of counsel claim raised for the first time on direct appeal. *E.g., United States v. Tucker*, 90 F.3d 1135, 1143 (6th Cir.1996); *United States v. Snow*, 48 F.3d 198 (6th Cir.1995). " 'Ineffective assistance of counsel claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue.' " *United States v. Seymour*, 38 F.3d 261, 263 (6th Cir.1994) (quoting *United States v. Daniel*, 956 F.2d 540, 543 (6th Cir.1992)).

The record before us is insufficient to allow us to assess the merits of defendant Riley's assertions of error. In particular, the claim that his counsel erred by deciding not to respond to the District Court's overtures for a motion seeking a mistrial could benefit from a more complete record. When the record "is insufficient to show whether the alleged wrongful acts could be considered sound trial strategy," we will not review the defendant's ineffective assistance of counsel claims for the first time on direct appeal. *Snow*, 48 F.3d at 199.

In contrast, the record allows us to appraise the merits of defendant Kincaide's allegation that he was denied effective assistance of counsel. His claim rests entirely upon the allegation that his stand-by counsel erred when he rested without calling any of the witnesses identified by defendant Kincaide. Defendant Kincaide asserts that this was particularly prejudicial because his counsel then submitted to the jury a defense theory that defendant had developed.

To succeed on an ineffective assistance of counsel claim, Kincaide bears the two burdens that the Supreme Court identified in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

> First, the defendant must show that his counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S.Ct. 2052. We have elaborated on these burdens, explaining that "the threshold issue is not whether [defendant's] attorney was inadequate; rather it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (en banc).

Kincaide fails to explain how any of the twenty people on his witness list were at all relevant to the theory of the case that his counsel submitted to the jury. Before trial, the District Court indicated that it would not receive testimony from four of the witnesses, whom Kincaide would call to testify about the lingering mental effects of slavery in the United States. The Court stated that it could not yet rule on five other witnesses, three of whom were psychologists. Of the remaining witnesses, Kincaide indicated that six or seven of these witnesses were his relatives, two more were attorneys, and two others would not be called. At trial Kincaide submitted a defense theory challenging the sufficiency of the evidence. The record shows that none of the witnesses on Kincaide's list was at all relevant to this defense theory. We conclude that Kincaide's trial counsel was not constitutionally deficient

when he rested without calling witnesses who were irrelevant to Kincaide's defense theory.

### III. Conclusion

For the foregoing reasons we affirm all the convictions of each defendant and affirm the sentences imposed on defendants Key and Riley.