**UNITED STATES OF AMERICA,**
**Plaintiff–Appellee,**

v.

**James BLACK, Defendant–Appellant.**

No. 99–5470.

United States Court of Appeals,
Sixth Circuit.

March 2, 2001.

462

Before BOGGS and MOORE, Circuit Judges, COHN,* District Judge.

OPINION

MOORE, Circuit Judge.

Defendant James L. Black appeals his conviction for being a previously convicted felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1).[1] Black con-

---

* The Honorable Avern Cohn. Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

1. 18 U.S.C. § 922(g)(1) states:

It shall be unlawful for any person ... who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been

tends that there was insufficient evidence to support a guilty verdict and that the district court erred by allowing the government to question him regarding an application for a protective order filed against Black by a former girlfriend, in which the girlfriend alleged that Black had threatened her with a firearm a month prior to his arrest on the current charges. We AFFIRM Black's conviction.

## I. BACKGROUND

On May 1, 1998, officers of the Madisonville, Tennessee Police Department executed a search warrant at James Black's home. James Black's father had given him the house two years earlier after the father suffered a brain aneurysm. Black testified at trial that he "had the house remodeled and everything" after it was given to him. Joint Appendix ("J.A.") at 157. Prior to that time, various members of the Black family had lived in the house.

From the time Black moved into the home until February 1998, he lived there with his former girlfriend, Donna Bradley. Following Bradley's departure, a new girlfriend, Rebecca Koon, moved into the house with Black in March 1998. Koon moved out of Black's home "sometime in April" 1998 as the result of a disagreement she had with Black, yet she moved back into the house shortly thereafter and had been living in the house for "three or four days" before the police executed their search warrant. J.A. at 158.

Upon executing the search warrant, the officers found Black standing in his bedroom. Within arm's reach of Black, on the dresser, was a loaded .380-caliber pistol.

Next to the gun on the dresser were loose .380-caliber bullets. Koon was in the bathroom adjacent to the bedroom at the time of the search. The officers also found, in plain view, a box of .380-caliber bullets sitting in Black's kitchen cabinet with the cabinet door open, and two boxes of ammunition in the hall closet. Of the two boxes found in the hall closet, one contained .22-caliber long rifle ammunition and the other was a cedar chest containing assorted types of ammunition. The officer who found the boxes of ammunition in the closet testified at trial that the assorted ammunition in the cedar chest was old and had probably been in the closet for a while.

At the time of the search, Black had four prior felony convictions: burglary in the first degree, rape, possession of marijuana, and sale of cocaine. On August 19, 1998, a federal grand jury returned an indictment charging James Black with one count of being a previously convicted felon in possession of a firearm, and one count of being a previously convicted felon in possession of ammunition.

At trial, Black, the only witness called by the defense, testified that the gun and the ammunition found on the bedroom dresser belonged to his girlfriend. Rebecca Koon.[2] Black stated that Koon had bought the gun to protect herself from Black's ex-girlfriend, Donna Bradley, who had threatened Koon with a knife after Koon began dating Black. Black said nothing to explain how the box of .380-caliber ammunition arrived in his kitchen cabinet, only stating that he had not put the box there and that he had never touched it. Black further explained that

---

shipped or transported in interstate or foreign commerce.

**2.** In rebuttal, the government called Koon as a witness. Koon testified at trial that the gun found on the dresser was not hers, yet she admitted on cross-examination that she had

told defense counsel before trial that the gun was hers. She later testified on redirect that she had told defense counsel the gun belonged to her because she "didn't want anybody to get in trouble." J.A. at 192.

his father had used the cedar chest found in the hall closet to store his old bullets. Black did not comment upon the box of .22–caliber rifle bullets found in the closet.

The jury was unable to reach a decision as to the charge in the first count of the indictment, possession of a firearm in violation of § 922(g)(1). The jury found Black guilty, however, of possession of ammunition in violation of § 922(g)(1), as charged in count two of the indictment. At the government's request, the district court later dismissed count one of Black's indictment.

Following the trial, Black renewed his motion for judgment of acquittal, stating that there was insufficient evidence to support the jury's guilty verdict. The district court again denied his motion, stating that Black resided permanently at the home where the ammunition was found, that he knew about the ammunition in the kitchen cabinet, and that he admittedly exercised dominion and control over the house and its contents. As for the other ammunition in the hall closet, the court stated that "based on the amount of time the ammunition had been in the home, Black's knowledge of the ammunition, and the close proximity of the ammunition to Black, the jury could have also believed Black possessed the other ammunition within the house." J.A. at 37.

Black also argued, in the alternative, that he was entitled to a new trial because the district court erred by allowing the government to question him regarding an application for a protective order filed against Black by a former girlfriend, in which the girlfriend alleged that Black had threatened her with a firearm a month prior to his arrest on the current charges. The district court denied this motion as well, stating that the probative value of the evidence outweighed any prejudice, that any possible prejudice was eliminated

when Black testified that the request for a protective order had been denied, and that there could be no prejudice because the jury had not convicted him of the firearm possession charge.

Black was sentenced on March 23, 1999 to a period of incarceration of ninety-six months. Black's appeal to this court followed.

## II. ANALYSIS

A. Sufficiency of the Evidence: Possession of Ammunition in Violation of § 922(g)(1)

When reviewing the sufficiency of the evidence to support a criminal conviction, this court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To convict Black under § 922(g)(1), the following three elements must be proved: "'(1) that the defendant had a previous felony conviction, (2) that the defendant possessed [ammunition], and (3) that the [ammunition] had traveled in or affected interstate commerce.'" *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir.1998), *cert. denied*, 525 U.S. 1166, 119 S.Ct. 1085, 143 L.Ed.2d 86 (1999) (quoting *United States v. Moreno*, 933 F.2d 362, 372 n. 1 (6th Cir.1991)). The defense openly acknowledged that Black was a previously convicted felon and it did "not dispute the fact that the firearm or the ammunition were in interstate commerce, for purposes of [§ 922(g)(1)]." J.A. at 135, 159–60. That leaves as the only disputed issue whether Black did in fact possess the ammunition found in his home on the day of the search.

Possession may be either actual or constructive to satisfy the possession element of § 922(g)(1). *Moreno,* 933 F.2d at 372–73. "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Kincaide,* 145 F.3d at 782 (quoting *United States v. Craven,* 478 F.2d 1329, 1333 (6th Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973)). This circuit has consistently held that constructive possession of an object exists when a person has dominion and control over the premises where that object is located. *United States v. Layne,* 192 F.3d 556, 572 (6th Cir.1999), *cert. denied,* 529 U.S. 1029, 120 S.Ct. 1443, 146 L.Ed.2d 330 (2000); *Kincaide,* 145 F.3d at 782; *United States v. Clemis,* 11 F.3d 597, 601 (6th Cir.1993), *cert. denied,* 511 U.S. 1094, 114 S.Ct. 1858, 128 L.Ed.2d 481 (1994). In light of this broad notion of possession, there is little doubt that, viewing the evidence in the light most favorable to the government, there was enough evidence for a rational trier of fact to find Black guilty of possession of ammunition in violation of § 922(g)(1).

Black testified at trial that the house in which he resided, and in which the ammunition was found, had been given to him by his father, and that he had been living in the house for the two years prior to the search. Black further admitted on cross-examination that "[e]verything in [his] house" was there for him to touch if he wanted to.[3] J.A. at 175.

Ammunition was found in several parts of Black's house, and so long as the jury could find that he constructively possessed any of the ammunition, this was enough to find Black guilty beyond a reasonable doubt of violating § 922(g)(1). First, loose .380–caliber bullets were found on the dresser of Black's bedroom. Even if we assume that the jury, because it did not find Black guilty of possessing the firearm that was found on the dresser next to the bullets, believed those bullets belonged to Black's girlfriend, there was still plenty of other ammunition that could be attributed to Black.

A box of .380–caliber bullets was found in an open cabinet in Black's kitchen. Black's testimony on direct made it clear that he knew there was a box of ammunition in his kitchen cabinet at least one day prior to the execution of the search warrant, and on cross-examination Black admitted that this box of ammunition, along with everything else in his house, was there for him to touch if he so desired. The district court also noted that Black's testimony regarding whether he had ever handled the ammunition in the kitchen cabinet was uncertain. When asked on cross-examination whether he had ever touched the ammunition in the kitchen cabinet, Black responded, "I don't think I ever touched it, no, ma'am." J.A. at 175. The district court noted that the jury "was entitled to credit or reject [this] testimony." J.A. at 37. This evidence alone is enough to satisfy this circuit's constructive possession standard regarding the box of ammunition in the kitchen, and thus is enough to convict Black of violating § 922(g)(1).

Ammunition was also found in Black's hall closet, including a box of .22–caliber long rifle ammunition and a cedar chest

---

**3.** Regarding the box of .380–caliber bullets found in the open kitchen cabinet that Black claimed he never touched, the government's attorney asked:

Q: You never touched it, but it was there for you to touch if you wanted to, wasn't it?
A: Everything in my house is.
J.A. at 175.

filled with assorted bullets that even the government's witness said were old. Black claimed that the bullets in the chest belonged to his father. This circuit has held that not only is constructive possession sufficient, but that possession need not be exclusive and may be joint. *United States v. Covert,* 117 F.3d 940, 948 (6th Cir.), *cert. denied,* 522 U.S. 880, 118 S.Ct. 204, 139 L.Ed.2d 140 (1997). Whether the old bullets in the chest originally belonged to his father or not, Black's own testimony conceded that he was able to exercise dominion and control over everything in his house. Furthermore, Black's testimony shows that he knew the chest was in his hall closet. Black testified that the chest had "been in the closet for years" and that his girlfriend had even taken the "mildew and stuff off of it." J.A. at 158–59. Viewing the facts in the light most favorable to the government, the jury could also have found that because Black knew there was a chest filled with ammunition in his hall closet, he also knew about the box of .22–caliber rifle ammunition that was located in the same area of the closet. As the district court stated, even if the jury did not take into account the bullets found in the cedar chest that Black claims belonged to his father, "based on the amount of time the ammunition had been in the home, Black's knowledge of the ammunition, and the close proximity of the ammunition to Black, the jury could have [ ] believed [that] Black possessed" the remainder of the ammunition in the house. J.A. at 37.

All the jury needed find to convict Black of violating § 922(g)(1) is that Black constructively possessed any of the ammunition in his home. The law of this circuit states that constructive possession exists when the person has dominion over the premises where the ammunition is located. *See Layne,* 192 F.3d at 572; *Kincaide,* 145 F.3d at 782; *Clemis,* 11 F.3d at 601. The evidence clearly showed that Black knew that he had ammunition in his house and that Black did have dominion and control over the premises. Viewing the facts in the light most favorable to the government, it is clear that a rational jury could find, beyond a reasonable doubt, that Black possessed ammunition in violation of § 922(g)(1).

**B. Did the District Court Err by Allowing Questions Regarding the Application for a Protective Order?**

■ In addition to his claim that the evidence was insufficient to support the jury's guilty verdict, Black also argues that the district court erred by allowing the government to question him regarding an application for a protective order filed against Black by a former girlfriend, in which the girlfriend alleged that Black had threatened her with a firearm a month prior to his arrest on the charges at issue in this case. The government first asked Black whether it was true that Donna Bradley "got an order of protection out against [him] in April of 1998[.]" J.A. at 170. Black testified that while Bradley had sought a protective order, the allegations against him were untrue and that Bradley's application for a protective order had been dismissed following a judicial hearing.

On recross, the government asserted in a question to Black that while the protective order had been dismissed, "to get that protective order, didn't Donna Bradley have to allege that you pointed a gun at her?" J.A. at 180. At this point, defense counsel made the following objection: "Your honor. I object to—first off, it's an unsubstantiated allegation. Further— which would make it prejudicial. And the prejudice would definitely outweigh the probative value. And, as stated, it was dismissed; therefore, any allegations, whatever they were, must have been un-

proven when it was heard in court." J.A. at 180. The district court overruled the objection with no further elaboration. The government then proceeded to ask additional questions highlighting Bradley's allegations that she was in fear of her life because Black had threatened her with a firearm.

Following the jury's verdict, Black filed a motion for a new trial based on the court's decision to allow questioning on the protective order, arguing that the allegations in the application for the protective order were unsubstantiated hearsay and unfairly prejudicial. The district court, in denying the motion, stated that the probative value of the evidence outweighed any prejudice, that any possible prejudice was eliminated when Black testified that the request for a protective order had been denied, and that there could be no prejudice against Black because the jury had not convicted him of the firearm possession charge.

In its appellate brief, the government argues that testimony regarding Bradley's allegations in her application for a protective order were admissible as "other acts" evidence under Fed.R.Evid. 404(b).[4] Appellee's Br. at 17. The government claims that while Black conceded that he knew the firearm was in the house, "he maintained that it belonged to his girlfriend and that he did not knowingly possess it." Appellee's Br. at 17. The government further argues that because Black "put at issue his intent to exercise dominion and control over the charged firearm[,]" other acts evidence was admissible to show Black's intent to possess the firearm under Rule 404(b). Appellee's Br. at 18.

If the district court errs with respect to the admission of evidence, we apply harmless error analysis on review. *United States v. Daniel*, 134 F.3d 1259, 1262 (6th Cir.), *cert. denied*, 525 U.S. 830, 119 S.Ct. 83, 142 L.Ed.2d 65 (1998). Thus, for errors not of a constitutional dimension, "unless it is more probable than not that the error materially affected the verdict[,]" it will be deemed harmless. *Id.* On the other hand, if a defendant fails to object to the improper admission of other acts evidence under Rule 404(b) with the requisite specificity at trial,[5] then the issue is not properly preserved on appeal, and we will review the trial court's evidentiary ruling only for plain error. *See United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir.), *cert. denied*, 449 U.S. 849, 101 S.Ct. 137, 66 L.Ed.2d 60 (1980); *United States v. Vincent*, 20 F.3d 229, 234 (6th Cir.1994). If Black were required to show that the trial court committed plain error, he must, among other things, show that the error "'seriously affect[ed] his substantial rights.'" *United States v. Monus*, 128 F.3d 376, 386 (6th Cir.1997) (quoting *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). To show that an error seriously affected his substantial rights, Black must prove that the error was prejudicial and that it "affected the outcome of the district court

---

4. Fed.R.Evid. 404(b) provides, in relevant part:
   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

5. Defense counsel, in objecting to the government's attempt to introduce testimony regarding the protective order, argued that Bradley's allegations were unsubstantiated and that the prejudicial effect of the allegations outweighed any probative value. J.A. at 180. Defense counsel did not specifically mention "other acts" or Rule 404(b).

proceedings." *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

■ Regardless of whether we review for harmless error or plain error, Black's conviction must be upheld. While the government's attempt to introduce evidence that Black's former girlfriend had sought a protective order against him and had alleged that he threatened her with a firearm may have been improper under Rule 404(b), the jury failed to convict Black of firearm possession under § 922(g)(1), and Black has offered no explanation as to how the government's line of questioning materially affected his guilty verdict for possession of ammunition.[6] Instead, as Black argued in his brief to this court, "[t]he Government introduced the allegation for only one purpose, to imply that if the Appellant possessed a firearm in the past, he must have possessed one now." Appellant's Br. at 9. Thus, even if we assume that the government's line of questioning was improper, Black is unable to show any prejudice resulting therefrom.[7]

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Black's conviction.

■

---

6. Furthermore, Black effectively refuted the government's allegations that he had threatened Bradley with a firearm, thus substantially limiting any risk of prejudice, by testifying on redirect that not only was Bradley's application for a protective order dismissed by a state court judge following a hearing, but that the judge ordered Bradley to have no further contact with Black, as opposed to the converse. J.A. at 181–82.

7. Black, in his motion for a new trial, argued for the first time that the government's ques-

---

tions regarding Bradley's application for a protective order were unsubstantiated hearsay. Black now raises this issue on appeal. When an argument is not raised at trial, this court must apply plain error review. *United States v. Fortson,* 194 F.3d 730, 736, (6th Cir.1999). As with his Rule 404(b) objection, Black's hearsay argument must also fail under plain error review because, in light of the jury's inability to convict Black of firearm possession, he cannot show how he was prejudiced by the government's questioning.