**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 11 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

GEORGE LEWIS SLOAN,

    Defendant - Appellant.

No. 00-7087
(D.C. No. 99-CR-89-S)
(Eastern District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **PORFILIO**, and **MURPHY**, Circuit Judges.

A jury found George Lewis Sloan guilty on four of five counts of manufacture and possession of methamphetamine with intent to distribute, all in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. After a hearing in which defendant's objections were aired, the court sentenced Mr. Sloan to life on Count I (possession with intent to distribute); life on Count II (manufacture of methamphetamine); 360 months on Count III

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

(possession with intent to distribute); and 260 months on Count 5 (knowing and intentional manufacture of amphetamine). Mr. Sloan raises four issues here, one of which the government concedes. We affirm on the remaining issues.

The parties are fully acquainted with the facts in this case; therefore, we shall mention them only when necessary to make plain our conclusions. Suffice, then, to state the issues presented by this appeal relate to claimed Fourth Amendment violations; the district court's refusal to depart downward in sentencing; and sentencing issues intertwined with the holding of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). We shall address the latter issues first.

Defendant argues 21 U.S.C. § 841(b) contravenes the Constitution because "Congress did not have the authority to remove the assessment of drug type and drug amount from the jury, and thus allow the Government to prove these elements only by a preponderance of the evidence at sentencing." He further contends if we disagree with that argument, his constitutional rights, as defined by *Apprendi*, have been violated because the jury did not decide the issues of drug type and quantity at trial.

We believe Mr. Sloan's first contention results from an overreading of *Apprendi*. We see nothing in the opinion which holds a statute including drug type and quantity penalties is unconstitutional. *See Apprendi*, 530 U.S. at 496. Although if factors relating to sentencing result in an increase of the crime's maximum sentence, they must be determined by the jury beyond a reasonable doubt, the Court did not rule those factors

beyond the legislative power, as Mr. Sloan seems to contend. *Accord **United States v. Slaughter***, 238 F.3d 580, 582 (5th Cir. 2000).

Nonetheless, the government concedes Mr. Sloan's sentences cannot stand under the weight of ***Apprendi*** because the factors which raise his statutory maximum of 30 years were neither charged in the indictment nor determined by the jury. We agree. ***United States v. Jackson***, 240 F.3d 1245, 1248 (10th Cir. 2001). Consequently, the case must be remanded for a proper sentence under 21 U.S.C. § 841(b)(1)(C).

Mr. Sloan also argues the district court erred in refusing to depart downward under U.S.S.G. § 5H1.4. He claims he suffers from an unusual liver disease that constitutes a physical condition for which departure is "encouraged" by ***Koon v. United States***, 518 U.S. 81 (1996).

Guideline § 5H1.4 states, in part, "[A]n extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range." Admitting the district court recognized Mr. Sloan's illness is extraordinary, he argues it did not grant downward departure because it failed to appreciate departure is "encouraged" by ***Koon*** for illnesses like his.

Mr. Sloan's argument is based on his hope that both ***Koon*** and the guideline are mandatory. Unfortunately for him, the permissive language in both suggests the employment of judicial discretion and does not command the result he seeks. Moreover, the district court clearly understood it had the discretion to depart downward in this case;

therefore, as we have already said so many times, we have no jurisdiction to review its choice. *See* **United States v. Saffo**, 227 F.3d 1260, 1271 (10th Cir. 2000).

Mr. Sloan claims the Fourth Amendment was violated when officers seized a container of "sham methamphetamine" from his car. He claims the officers acted without probable cause to stop the car because they did not have continuous control or observation of the object seized. After an evidentiary hearing, the district court, setting forth in detail the evidence upon which it relied, found as a matter of fact "the government has established continuous surveillance of the sham methamphetamine." Because we review such findings for clear error, **United States v. McKissick**, 204 F.3d 1282, 1296 (10th Cir. 2000), and there is ample supporting evidence in the record, we are constrained to affirm the court's holding.

Mr. Sloan next contends the district court erred by not suppressing evidence found at his home. At oral argument, counsel argued money found in a pipe was discovered by officers who used a backhoe to dig up earth around Mr. Sloan's house. That is not an accurate statement.

During the search of the Sloan house, Deputy Sheriff Sexton stepped outside to smoke a cigarette. He said he noted holes "approximately the same size of four inch PVC pipe, as well as [sic] posthole digger, the same size hole." Apparently while walking around and smoking, Deputy Sexton, "kicked" a cap on a PVC pipe. He noted, "[t]here was still just a fine layer of dirt over the top of the PVC pipe itself. The PVC pipe was

- 4 -

still down in the ground . . . and there was a little layer of dirt over the top of the cap." He removed the dirt around the pipe and withdrew it. Returning to the house, he opened the pipe and discovered a black plastic bag from which he removed money. The next day, returning to the same area, Deputy Sexton and another officer dug with "a shovel" and he "did get on a tractor and use it a little bit."

From these facts, Mr. Sloan argues Deputy Sexton's actions constituted a "flagrant disregard for the terms of the search warrant." He maintains officers should have obtained another warrant before removing the PVC pipe from the ground. He predicates that argument upon *United States v. Donnes*, 947 F.2d 1430, 1434-35 (10th Cir. 1991). *Donnes*, however, dealt with circumstances arising from a warrantless search of a home and simply is not germane to this case.

Here, the district court found officers were armed with a warrant which authorized the search of the home and the "curtilage," and their actions did not abuse the authority given by the warrant. We agree. Not only is Mr. Sloan's version of the facts out of sync with the record, but also his premise is wrong.

Mr. Sloan argues the warrant executed at his house was based upon a false affidavit of the applying officer; thus, all the evidence seized there should have been suppressed. In an argument that is somewhat difficult to follow, counsel seems to contend the officer lied in the affidavit about the veracity of the informant, Duvall. The lies, he says, are apparent when the contents of the affidavit are compared with the

officer's subsequent testimony. We must say, however, we cannot see the inconsistency upon which counsel relies. Nonetheless, it is clear from the record even the falsehoods noted by the defendant are neither flagrant nor deliberate. We believe the premise for the argument is, at best, fanciful and deserves no further discussion.

Formulating an unsupported and creative view of the Fourth Amendment, Mr. Sloan asserts suppression should have been granted because of the treatment of Ms. Sloan "prior to and during execution of the search warrant." He maintains she was detained "for a total of approximately six to eight hours prior to obtaining a search warrant for the Sloan residence." He also claims Ms. Sloan was "not free to leave her home prior to the search warrant execution, and not allowed to go anywhere within her home by herself, other than the bathroom." No supporting legal authority is offered for this proposition.

This approach is unacceptable. Counsel is expected to cite to us the authorities upon which he relies in support of his contentions. Fed. R. App. P. 28(a)(9)(A). This court will not conduct a review of legal authority to ferret out support for the arguments of counsel. That is precisely what Rule 28 seeks to avoid. Moreover, a legal argument supported with no authority is worse than no argument at all. We find nothing credible in this contention, and we do not believe ourselves constrained to deal with sophistry.

Mr. Sloan then advances the argument suppression should have been granted because the warrant was not executed before 10:00 p.m. as required. Again, this argument is made despite testimony of the officers and findings of the district court to the

contrary. The theory is founded upon testimony of Ms. Sloan that the warrant was served between 10:30 and 10:45, and that of her daughter who stated she was talking to her mother on the telephone at 10:30 p.m. when her mother said she would have to terminate the conversation because "an agent" was reading "something" to her.

Faced with the conflict between the testimony of the officers who stated the warrant was served before 10:00 p.m. and the contrary statements of the defense witnesses, the district court resolved the issue by holding the testimony of the officers was more credible. Not only is that a finding of fact that is not clearly erroneous, but also it is one that is binding upon this issue. We must therefore conclude the writ was executed in accordance with Fed. R. Crim. P. 41(c).

In his coda to contentions that the items seized from his home should be suppressed, Mr. Sloan states seizures made by Arkansas officers and those of items not described in the warrant should be grounds for a blanket suppression. We do not agree.

First, as noted by the district court, the items not described in the warrant were returned to the defendant and the remaining were within the descriptions provided in the warrant. Second, the issue of suppression is decided upon the basis of federal, not Oklahoma law. Under the former, the federal officer executing a search warrant has authority to solicit the aid of another who may do so in the presence of the officer. 18 U.S.C. § 3105. The fact that Arkansas officers assisted Agent Waddell is of no moment.

*See* **United States v. Medlin**, 842 F.2d 1194, 1196 (10th Cir. 1988). We therefore agree with the conclusions reached by the district court.

Defendant next attacks the district court's rulings relating to the search of the McKnight Motel. Contending first the search warrant was based upon another defective affidavit, Mr. Sloan argues the district court erred in failing to suppress items taken from room 58. At the suppression hearing, the government conceded that the affidavit of Chief Philpot stated, "within the last seventy-two hours" Chief Philpot met with a confidential informant who had been in motel room 58 and had seen a "powdered substance." However, the affidavit was defective, in the government's eyes, because it did not state the <u>informant</u> had been present in room 58 within that seventy-two hour period. In the district court, both counsel agreed that was the "defect" upon which the motion to suppress was predicated.

The district court's findings note Chief Philpot testified that while he failed to state the informant had been present in room 58, the informant nevertheless told him: 1) he had been in the room twice in the twenty-four hours preceding the making of the affidavit; 2) that he had observed the making of amphetamine while he was there; and 3) that occupants of the room told the informant amphetamine was being manufactured there. Chief Philpot also knew defendant had rented room 58.

On the basis of this testimony, the district court concluded Chief Philpot had an objectively reasonable basis for believing there was probable cause to search room 58.

The court further held under the circumstances Chief Philpot "acted with objective good faith." The court believed the failure to state in the affidavit the recent presence of the informant in the room to be searched "did not diminish" the propriety of Philpot's reliance upon the search warrant, citing **United States v. Leon**, 468 U.S. 897 (1984).

Taking on Mr. Sloan's contention Chief Philpot omitted "critical information" in his affidavit, the court next considered whether the issuing magistrate was misled prior to granting the warrant. Although the defendant argued Chief Philpot did not set forth room 58 had been rented by Mr. Sloan and did not know for how long the room had been rented, the district court "fail[ed] to see how these omissions translate into any deception by Philpot with respect to a probable cause determination." Thus, the court reasoned, the warrant was issued upon truthful statements and not upon false or misleading representations.

The court then tested the facial sufficiency of the warrant to determine whether Chief Philpot's good faith reliance was unwarranted. Finding no deficiency with respect to room 58, the court applied **Leon** and denied the motion to suppress. We agree with both the analysis and the conclusion.

Nothing presented here by Mr. Sloan demonstrates error in this result. Not only has he failed to substantiate Chief Philpot's affidavit was intentionally misleading, but also the distinctions he draws between testimony and the contents of the affidavit are non

sequiturs serving only to obfuscate the essential evidence that is determinative of the issue.

Pursuing a "poisonous tree" analysis, Mr. Sloan argues the contents of a storage shed should have been suppressed because the officers learned of the existence of the shed from rental receipts previously suppressed by the district court. Although the seizures were effected after the discovery of the rental receipts, the government argued probable cause for the affidavit and the subsequent search arose from an interview of Shawn Ava, one of the occupants of the McKnight Motel, conducted by IRS Agent Diana Megli.

Agent Megli testified on December 9, the day before the affidavits were prepared, she interviewed Shawn Ava who told Agent Megli about the existence of the storage units. According to Agent Megli, Ava stated she had been to the units "on several occasions" with Mr. Sloan "during the past few weeks." The agent said Ava told her she had seen antiques, clothes, furniture, wheels, glass beakers, and records in boxes in the units. Although Agent Megli was primarily interested in the records, the other officers with whom she was working were interested in the glass beakers upon the premise "there was some sort of lab there."

Although Agent Megli discovered the numbers of the storage units from the receipts later suppressed by the district court, she stated she could have discovered the same information by simply interviewing people who had rented the units to Mr. Sloan.

Additionally, Ms. Ava stated she could take the agent directly to the exact units she had visited.

Cross-examination of Agent Megli answered the question of who between Megli and Ava initiated discussion about the storage units. When asked, initially the agent was not sure whether she or Ava brought up the matter. Agent Megli stated, "I wouldn't have known that she knew anything about the mini storage. It said Lucile Ford on the receipt [that had been suppressed]." When counsel pursued the issue, and asked, "She just popped that out and said, 'Hey, I need to let you know this?'" Agent Megli responded, "As far as I know she did. I didn't know that she knew about the receipts to have asked her that question." Again, after prompting by counsel, the agent stated, "Oh, I didn't ask her about a storage unit." She admitted she might have asked what places she had visited with Mr. Sloan, but she was adamant she did not ask about the storage units.

On the basis of this evidence, the district court found the discovery of the storage unit and its contents was inevitable. Thus, their seizure fell within an exception to the poisonous tree doctrine.

This evidence notwithstanding, Mr. Sloan insists on arguing "the items found in the mini-storage units were *directly* tied to the alleged illegality. Without the illegal search of the Dodge Truck, the Government would not have known about the receipts and the storage units." This argument is clearly refuted in the record. Not only does it ignore the testimony of Agent Megli about who initiated discussion of the units in the first

instance, but it also overlooks her testimony that the receipts bore the name of another person, not that of Ms. Ava. Mr. Sloan's argument that Ava's statements were "logically" in response to "inquiries by the officers as to whether she knew of the existence of the storage units" is simply not borne out by the record.

The independent source rule, ***Nix v. Williams***, 467 U.S. 431, 441 (1984); and the inevitable discovery rule, ***United States v. Larsen***, 127 F.3d 984, 986 (10th Cir. 1997), are ample reasons for affirming the district court in full. We do so.

The judgment is **AFFIRMED IN PART** and **REVERSED IN PART AND REMANDED** for resentencing in accordance with this order and judgment.

ENTERED FOR THE COURT

John C. Porfilio
Senior Circuit Judge

- 12 -