NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0499n.06

No. 09-5399

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 11, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| DOUGLAS WHISNANT | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant.* | ) | |

BEFORE:    COLE and MCKEAGUE, Circuit Judges; MAYS, District Judge.[*]

**Cole, Circuit Judge**.  Defendant-Appellant Douglas Whisnant challenges his convictions

and 300-month sentence for being a felon in possession of firearms and ammunition, in violation of

18 U.S.C. § 922(g)(1), and possession of an unregistered machine gun, in violation of 26 U.S.C. §§

5841, 5861(d).  We **AFFIRM**.

## I.  BACKGROUND

In February 2007, Jean Johnson, Whisnant's former spouse, disappeared, and the

investigation of her disappearance immediately focused on Whisnant because of their tumultuous

relationship.  As part of the investigation, law enforcement applied for and received a warrant to

search his property.  The warrant, issued by a Tennessee state court judge on March 9, 2007,

---

[*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District
of Tennessee, sitting by designation.

authorized a search of "the entire premises, woods, fields, curtilage, the residence and all out buildings and all vehicles and equipment" for "the body of . . . Jean Johnson . . . or portions thereof; human blood; the purse and personal effects of Jean Johnson; Ford van keys; a pink suitcase; a small security camera and video cassette tape; a .38 caliber Smith and Wesson pistol . . . bombs, gun powder, explosives, and gun components."  (District Court Record ("R.") 16, Resp. to Mot. to Suppress, Ex. E: Search Warrant.)

Officers from several different agencies executed the search warrant, dividing into teams to search the property.  Captain Tommy Ray Jeffers of the Scott County Sheriff's Department was assigned to search the residence.  On the porch, he noticed construction materials and plasterboard used for drywalling.  Once inside, he entered a room with a picture hanging over a fireplace and noticed that the fireplace utensils were covered in a white powder that resembled drywall dust.  He also noticed that the paint surrounding the picture appeared to have been recently touched-up.  Realizing that the picture may have been hung in an effort to conceal evidence, Jeffers, joined by other officers, removed it.  The officers then could see that the wall recently had been patched.  Next, the officers cut a small hole in the patch through which Jeffers could see what appeared to be rolls of cloth.  The officers then enlarged the opening and discovered that the cloth actually was numerous gun bags.

Because of Whisnant's history of bomb-making, the officers were concerned that the area inside the wall might be rigged with explosives.  They therefore asked members of the bomb-squad unit to remove the items.  As members of the unit removed the items from the wall, they discovered firearms, ammunition, and bomb-making materials.  In addition to several rifles, shotguns, and

pistols, a Sten machine gun and two pen guns were found. Also, a search of a workshop on Whisnant's property uncovered components of a Sten machine gun.

Less than two weeks later, on March 21, 2007, a grand jury indicted Whisnant on one count of being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). Whisnant filed a motion to suppress the firearms and ammunition found behind the wall of his home. During the suppression hearing, the magistrate judge heard testimony from several officers, including Detective Donnie Anderson, who was present during the search. After the district court denied the motion to suppress, it came to light that Anderson had engaged in professional misconduct unrelated to this case. Consequently, the magistrate judge conducted a second hearing without testimony from Anderson. During the second hearing, Jeffers testified and explained the manner in which the search was executed and described the circumstances leading to the decision to cut a hole in the wall. The magistrate judge concluded that the "officers reasonably made access into the wall" to search for the items listed in the "broadly worded search warrant," and recommended denying the motion to suppress. (R. 41, Report and Recommendation, 7.) The district court agreed and denied the motion.

On July 16, 2008, a grand jury returned a superseding indictment charging Whisnant with knowingly possessing an unregistered machine gun, in violation of 26 U.S.C. §§ 5841, 5861(d), in addition to the previous felon-in-possession charge.

The case against Whisnant proceeded to trial. A number of law enforcement officers testified as to the items uncovered during the search of Whisnant's residence. Agent Forest Webb of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") testified that he was part of the team that executed the search and had discovered components of a Sten machine gun. Agent Sean Knapp, a

firearms specialist with the ATF, then explained to the jury that both a Sten gun and components of a Sten gun qualify as a machine gun and must be registered under federal law. Knapp further explained that, for purposes of federal law, Whisnant possessed three machine guns: "the functional machine gun, the cut out receiver, and combination of parts from which a machine gun could be assembled." (R. 86, Trial Tr., 45-46.) The Government also introduced evidence under Federal Rule of Evidence 404(b) that Whisnant previously had been convicted in state court for illegally possessing a Sten machine gun. Finally, a fingerprint examiner testified that a fingerprint belonging to Whisnant was found on the seized fully-assembled Sten gun.

Before resting, the Government read a number of stipulations into the record: (1) the commercially manufactured firearms found on Whisnant's property were manufactured outside the State of Tennessee; (2) Whisnant was a convicted felon; and (3) none of the firearms found on Whisnant's property were registered. Whisnant offered no witnesses and was convicted on both counts.

The United States Probation Office then prepared a Presentence Investigation Report ("PSR"). The PSR determined that Whisnant was an Armed Career Criminal under 18 U.S.C. § 924(e)(2), and calculated an offense level of 34. The PSR placed Whisnant in criminal history category IV, and, based on that category and the offense level of 34, set Whisnant's advisory guidelines range at 262 to 327 months of imprisonment. Whisnant did not object to the PSR.

On March 11, 2009, the district court held a sentencing hearing. After considering the factors listed in 18 U.S.C. § 3553(a) and the Guidelines range, the district court sentenced Whisnant to a within-Guidelines sentence of 300 months. The district court did so in part because Whisnant has

an extensive criminal history, was on probation at the time of the offense, and since has pled guilty to his former spouse's murder.

Whisnant timely appealed.

## II. ANALYSIS

On appeal, Whisnant argues that: (1) law enforcement violated his Fourth Amendment rights; (2) 18 U.S.C. § 922(g)(1) is unconstitutional under the Second Amendment; (3) insufficient evidence supported his convictions; and (4) the district court should have given him a below-Guidelines sentence.

## A.      Fourth Amendment claim

Whisnant argues that law enforcement violated his Fourth Amendment rights. In particular, he asserts that by cutting holes in the interior walls of his house, law enforcement seized the walls and thus exceeded the scope of the search warrant. "When reviewing a district court's decision on a motion to suppress, we use a mixed standard of review: we review the findings of fact for clear error and conclusions of law de novo." *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009) (internal quotation marks omitted). Whether a seizure is reasonable under the Fourth Amendment is a question of law and thus is reviewed de novo. *United States v. Evans*, 581 F.3d 333, 340 (6th Cir. 2009). In addition, when the district court has denied a motion to suppress, we "review[] the evidence in the light most likely to support the district court's decision." *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009) (internal quotation marks omitted). Here, the district court concluded that the search was reasonable, and we agree.

The Supreme Court has held that "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820-21 (1982). To illustrate, the Court offered the following example: "[A] warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found." *Id.* at 821. Admittedly, the interior of a wall does not fit precisely the definition of a container. Further, part of Whisnant's property—his wall—was damaged. But the Supreme Court has explained: "[O]fficers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979). Moreover, like other Fourth Amendment inquiries, "the manner in which a warrant is executed"—including the damage of property—"is subject to later judicial review as to its reasonableness." *Id.*; *see also United States v. Ramirez*, 523 U.S. 65, 71 (1998) ("The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant." (internal citation omitted)).

Several facts support the conclusion that the officers in this case acted reasonably. First, the warrant was worded broadly, permitting the officers to search "the entire premises." Second, the decision to cut a hole in the wall was based on the presence of drywall dust, the haphazard paint job around the picture, and the recently plastered patch of drywall behind the picture. Third, the officers first cut a small hole in the wall, only cutting a larger hole once it became clear that items were hidden behind the wall. Finally, the damage to Whisnant's property was slight, and "[t]here is no

indication that [the officers'] intrusion went beyond what was necessary." *Dalia*, 441 U.S. at 258 n.20.

Accordingly, we conclude that the execution of the warrant was reasonable. *Cf. United States v. Sloan*, 17 F. App'x 759, 761 (10th Cir. 2001) (finding that officers acted reasonably by digging up defendant's yard after they discovered money protruding from the soil); *United States v. Weinbender*, 109 F.3d 1327, 1329-30 (8th Cir. 1997) (holding that law enforcement acted reasonably by removing drywall to find contraband); *United States v. Gregory*, No. 90-30327, 1991 WL 86885, at *2 (9th Cir. May 13, 1991) (finding that officers acted reasonably by removing carpet in search of narcotics); *United States v. Becker*, 929 F.2d 442, 444 (9th Cir. 1991) (holding that officers acted reasonably by using a jackhammer to search beneath a concrete slab to find drug-making materials).

**B.     Second Amendment claim**

Next, Whisnant relies on *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), to argue that the federal statute prohibiting felons from possessing firearms and ammunition, 18 U.S.C. § 922(g)(1), violates the Second Amendment. Whisnant misreads the decision. In *Heller*, the Supreme Court recognized an individual right to bear arms but also held that "the right secured by the Second Amendment is not unlimited." *Heller*, 128 S. Ct. at 2816. In particular, the Court noted that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 2816-17.

Relying on that language from *Heller*, this Court has held that § 922(g)(1) comports with the Second Amendment, stating that "prohibitions on felon possession of firearms do not violate the Second Amendment," and "Congress's prohibition on felon possession of firearms is constitutional."

*United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010) (citing *United States v. Frazier*, 314 F. App'x 801, 807 (6th Cir. 2008)); *see also United States v. Khami*, 362 F. App'x 501, 507-08 (6th Cir. 2010) (rejecting Second Amendment challenge to § 922(g)(1)). We therefore reject Whisnant's Second Amendment claim.

## C.     Sufficiency of the evidence

Whisnant also argues that the Government presented insufficient evidence to convict him of either charge. When reviewing the sufficiency of the evidence, we "view[] the evidence in the light most favorable to the prosecution," and if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," we affirm. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

### 1.     18 U.S.C. § 922(g)(1)

In order to secure a conviction under 18 U.S.C. § 922(g)(1), the Government must prove three elements: (1) that the defendant had a previous felony conviction; (2) that the defendant possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce. *United States v. Gardner*, 488 F.3d 700, 713 (6th Cir. 2007). At trial, the parties stipulated to the first and third elements. Thus, the only disputed element was the second—whether Whisnant possessed the firearm.

The possession requirement of § 922(g)(1) can be satisfied by showing that the defendant had actual or constructive possession of the firearm. *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998). "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control

over an object, either directly or through others." *Id.* (internal quotation marks omitted). In addition, proof that the defendant "has dominion over the premises where the firearm is located" suffices to establish constructive possession. *Id.* (internal quotation marks omitted).

The evidence at trial was sufficient to prove that Whisnant had constructive possession of the seized firearms and ammunition. Whisnant admitted to living at the address where the items were found, and other records confirm his address. Moreover, he has offered no evidence that someone other than him cut a hole in his wall; stuffed the hole with firearms, ammunition, and gun-making materials; patched the drywall; hung a picture over the patch; and painted the area surrounding the picture.

### 2. 26 U.S.C. §§ 5841, 5861(d)

Sufficient evidence also supports Whisnant's conviction for possession of an unregistered machine gun. Sections 5841 and 5861(d) criminalize an individual's possession of a machine gun that has not been registered with the National Firearms Registration and Transfer Record. 26 U.S.C. §§ 5841, 5861(d); *Staples v. United States*, 511 U.S. 600, 602 (1994). For purposes of § 5861(d), a machine gun is defined as "any weapon which shoots, . . . or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon . . . ." 26 U.S.C. § 5845(b). To prove a violation of § 5861(d), the Government must demonstrate not only that the defendant possessed a machine gun but also that the defendant "knew of the features of his [gun] that brought it within the scope of the Act." *Staples*, 511 U.S. at 619.

The parties stipulated that Whisnant had not registered any of the firearms on his property. Thus, to establish a violation, the Government had to prove that: (1) Whisnant had possession of a firearm; (2) that satisfies the statutory definition of a machine gun; and (3) he was aware of the operation and features of the gun that render it a machine gun under federal law. As to the first element, a fully-assembled Sten gun and components of a Sten gun were found on Whisnant's property. In addition, Whisnant's fingerprint was found on the fully-assembled gun. With regard to the second element, ATF Agent Knapp testified that the fully-assembled Sten gun fit the statutory definition because it fired three five-round automatic bursts during a test-fire. Moreover, as Agent Knapp explained to the jury, the Sten gun components found on Whisnant's property also qualify as a machine gun. *Cf. United States v. Carter*, 465 F.3d 658, 664 (6th Cir. 2006) (holding that "possessing the frame or receiver of a machine gun and parts designed and intended for use in converting a weapon into a machine gun" satisfies the definition of machine gun for purposes of indicting an individual under § 5861(d)). To prove the final element—that Whisnant knew of the features of his firearm that brought it within the Act—the Government offered evidence that Whisnant manufactured Sten guns and component parts and previously had been convicted of possessing a Sten gun, thus establishing the requisite knowledge.

**D.     Sentencing**

Finally, Whisnant argues that the district court should have given him a below-Guidelines sentence. In his brief, Whisnant provides only two sentences to make this argument and offers no legal support or analysis. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *El-Moussa v. Holder*, 569 F.3d 250, 257

(6th Cir. 2009) (internal quotation marks omitted); *see also id.* ("It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.") (alteration in original) (internal quotation marks omitted). Thus, Whisnant has waived his sentencing challenge.

Moreover, even if Whisnant's argument is deemed not waived, other hurdles stymie his success. First, he argues that the district court should have departed from the Guidelines range, but we do "not review district court decisions not to depart downward" unless the court did not understand its discretion to do so, *United States v. Puckett*, 422 F.3d 340, 345 (6th Cir. 2005)—an argument that Whisnant has not made. Second, his claim still falls short even if we interpret his argument as a challenge to the district court's decision not to vary. The district court properly calculated the advisory Guideline range, to which Whisnant did not object, and considered the 18 U.S.C. § 3553(a) factors before handing down the within-Guidelines sentence. Whisnant has failed to rebut the presumption of reasonableness that applies to such a sentence, *see United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc), and we easily reject his claim.

### III.  CONCLUSION

For all of these reasons, we **AFFIRM** the judgment of the district court.