**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0795n.06

Case No. 13-3873

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Oct 22, 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| RAYMONE CLEMENTS, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: SUTTON and KETHLEDGE, Circuit Judges; ROSENTHAL, District Judge.*

SUTTON, Circuit Judge. A jury found Raymone Clements guilty of being a felon in possession of a firearm and ammunition. 18 U.S.C. § 922(g)(1). He appeals the verdict and its accompanying 275-month sentence, claiming the district court: (1) admitted impermissible character evidence, (2) admitted impermissible hearsay, (3) erroneously denied oral argument on his motion for acquittal, (4) committed cumulative error, and (5) imposed an unreasonable sentence. We affirm.

---

* The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

I.

Police responded to a call about an agitated bullmastiff tied to a tree. They found that it had been shot. The bullmastiff's owner reported that one of her friends, Raymone Clements, had shot the dog after it had bitten her son several times.

Clements and local law enforcement were well acquainted. His criminal history contains sixteen juvenile convictions and fifteen adult convictions, including burglary, armed robbery, drug trafficking, and the rape of two girls, one seven and one fourteen. After learning of Clements' involvement with the shooting, police obtained a search warrant for his 57th Street apartment. They found two .22-caliber rounds and one .357-caliber round sitting on a bedroom floor. Federal prosecutors indicted Clements for being a felon in possession of ammunition, and they issued a warrant for his arrest. *See* 18 U.S.C. § 922(g)(1).

Federal agents spotted Clements' white SUV outside a nearby house on Nursery Avenue. When Clements walked out, he found the agents waiting. Inside was Betty Williams. She had arrived there with Clements at 3:00 a.m. that morning. Betty invited the agents into the house. Once inside, they spotted a small handgun sitting on a cluttered dining room table. Clements insisted that he did not live there. His friend Shareitta Buffington rented the house, he claimed; he had stopped by only for the night. Agents, however, found keys to the Nursery Avenue house in Clements' pocket and a "new landlord" contact in his mobile phone for Jonathan Schaefer, the owner of the house. R. 57 at 208–09, 211–13. Clements had recently informed Cleveland Heights police that he was moving out of his place on 57th Street. His dog also was in the basement.

Federal agents secured and executed a search warrant at Nursery Avenue. They found the gun, a .22-caliber pistol, where they left it. Sitting on the table along with the gun was a

cable bill in Clements' name, his CPAP machine (for sleep apnea), the machine's delivery receipt addressed to Nursery Avenue, his car insurance policy, and a large case of tattooing supplies (Clements is a tattoo artist). Agents found Clements' laptop, external monitor, and printer upstairs. They also discovered several clippings of a newspaper article titled "Man Accused of Shooting For[r]est the Dog Indicted on Felony." R. 58 at 23; *see* Donna J. Miller, *Man Accused of Shooting Forrest the Dog Indicted on Felony*, Plain Dealer (Cleveland, Ohio), Jan. 8, 2013, at B2. Clements' prescriptions and diabetic supplies were in the house too. Agents saw nothing to indicate that Shareitta or any other woman lived there.

Prosecutors added a second § 922(g)(1) count to Clements' indictment. He pleaded not guilty, and the case proceeded to trial. The jury found Clements guilty of possessing the ammunition from 57th Street and the gun from Nursery Avenue. The conviction triggered the Armed Career Criminal Act and its fifteen-year mandatory minimum sentence. *See* 18 U.S.C. § 924(e). Altogether, the sentencing guidelines recommended a range of 235 to 293 months. The district court imposed a 275-month sentence.

Clements appealed his conviction and sentence. Representing him on appeal (with supervision by a licensed attorney) is Joel C. Bryant, a student at the University of Michigan Law School. Mr. Bryant served his client well, and we thank him for his able advocacy.

## II.

*The Dog Shooting.* Clements contends that the government erroneously introduced evidence regarding the dog shooting. *See* Fed. R. Evid. 403, 404(b); *United States v. Hardy*, 228 F.3d 744, 748–50 (6th Cir. 2000). This initial challenge triggers a preliminary question: May we consider the argument at all? At a minimum, Clements agreed that the government could admit some of the dog-shooting evidence, which suggests he waived (as opposed to

forfeited) some or all of this objection. *See United States v. Keskes*, 703 F.3d 1078, 1089 (7th Cir. 2013); *United States v. Beard*, 394 F. App'x 200, 204 (6th Cir. 2010).

Before trial, the prosecution filed a notice of intent to introduce evidence about the dog shooting during the trial. By the time of voir dire, the court had not yet ruled on the motion. At voir dire, Clements' trial counsel, not the government, introduced the topic. He told the jury about his client's involvement in the incident when he asked a dog-related question to a prospective juror. After Clements' counsel raised this question, prosecutors asked to approach the bench. During the sidebar conference, Clements' counsel agreed that evidence of the dog shooting would be admissible to explain how the search warrant for the apartment on 57th Street came about.

Rather than briefly introduce this contextual piece of background evidence, however, the government devoted a considerable part of the trial to the topic. Its first witness was the responding officer, who talked about the dog shooting. Testimony followed from the dog's owner and her friend, both present when the dog was shot and both of whom pointed the finger at Clements. The prosecution then played the hour-and-fifteen-minute tape from Clements' interrogation for animal cruelty. Next came pictures of the dog before and after the shooting.

As the government sees it, all of this dog-related evidence fell within the scope of Clements' initial knowing and voluntary waiver. That is a heavy lift. No doubt, Clements waived a challenge to the admissibility of some of this evidence, but it is difficult to say that the scope of the waiver covered all of it. Clements' counsel, true enough, never objected to any of this evidence, which may suggest he never perceived a breach of the agreement. But it is also possible, and in our view more likely, that counsel merely forfeited any objection to the government's introduction of so much evidence on this score. While a party who waives

evidentiary objections may not seek review of them at all, a party who fails to object to the introduction of evidence may seek plain-error review of the forfeited objection. *See United States v. Olano*, 507 U.S. 725, 733 (1993). We apply plain error here.

To establish plain error, the non-objecting party must show (1) an error (2) that is plain, (3) that affected the party's "substantial rights," and (4) that "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation omitted). "Meeting all four prongs is difficult, as it should be." *Id.* (internal quotation omitted). Even if for the sake of argument we assume that it was clear error to introduce so much evidence about the dog shooting, Clements comes up short on the third and fourth prongs of the test.

He faces three problems. First, the dog shooting was relevant to the case. Not only did it provide context to the warrant issued to search the 57th Avenue apartment, but it also connected Clements to the Nursery Avenue house. Police found a copy of a newspaper article about the dog shooting at that address. The article tied Clements to the house *if* he was a suspect in the dog shooting, as indeed he was. On this record, it is reasonable to assume that some evidence about the dog shooting would have come in, no matter what Clements' counsel had done.

Second, the government introduced a great deal of unquestionably legitimate evidence that tended to show that Clements "ha[d] dominion over the premises where the [ammunition or firearm was] located." *United States v. Black*, 5 F. App'x 461, 466 (6th Cir. 2001); *see United States v. Layne*, 192 F.3d 556, 572 (6th Cir. 1999); *cf. United States v. Arnold*, 486 F.3d 177, 180–84 (6th Cir. 2007) (en banc). Start with the Nursery Avenue house, where the gun was found. Federal agents found the house by spotting Clements' white SUV parked outside. Clements admitted to sleeping there overnight. The house keys were in his pocket. His

5

possessions were inside, many of them not the kinds of things one would bring for a brief visit. Then there is the "new landlord" mobile-phone contact for the house's owner. The owner testified at trial that he dealt directly with Clements when renting the property. Clements' name originally appeared on the lease—at least until Clements called the owner after being released from jail and asked to transfer it to his friend Shareitta Buffington. The same is true for the 57th Street apartment. Clements told authorities that he lived there, and police discovered three bullets inside. Two of the rounds measured at .22 caliber, the same as the gun at Nursery Avenue. And all three rounds sat in plain view. In addition, a government witness testified that she had seen the gun Clements was charged with possessing in his car sometime before the dog shooting. And Clements himself told a police detective that he had recently seen and heard a small pistol matching the description of that gun.

Third, *both* parties put this evidence in context during closing arguments. They both explained that the dispositive issue in the case *was not* whether Clements had shot the dog. In light of this qualification and all of this evidence, it is difficult to say that any error affected Clements' "substantial rights" *and* "seriously affect[ed] the fairness, integrity or public reputation" of the proceeding. *Puckett,* 556 U.S. at 135.

*Statements by Betty Williams.* Clements next challenges the admission of statements that Betty Williams made to federal agents Nathan Honaker and Jean-Marc Behar at the Nursery Avenue house and that were repeated by them at trial. As Clements sees it, the statements (suggesting he lived on Nursery Street) amounted to inadmissible hearsay under Rule 802 of the Federal Rules of Evidence and violated the Confrontation Clause to boot.

Clements forfeited his challenges to the introduction of each statement. He did not object to Agent Honaker's testimony at trial, meaning plain-error review applies. *See Puckett*, 556 U.S.

at 135–36. As for Agent Behar, Clements objected to his testimony, but he never stated the legal grounds for doing so. That too amounts to a forfeiture and what comes with it: plain-error review. *See United States v. Deitz*, 577 F.3d 672, 688 (6th Cir. 2009).

Clements cannot meet this standard. As just shown, considerable other evidence shows that Clements possessed the firearm and ammunition. That is true with or without Betty's statements. *See United States v. Hadley*, 431 F.3d 484, 507–08 (6th Cir. 2005).

Clements offers two responses, both unavailing. He argues that Betty's statements constitute the only direct evidence linking Clements to Nursery Avenue. Yet he told agents virtually the same thing that Betty did: "He stated that . . . [Betty Williams] came with him when he arrived at the [Nursery Avenue] house" at "approximately 3:00 a.m." on the morning of his arrest and that he "fell asleep in a chair in the computer room." R. 57 at 250–51. The government at all events does not need direct evidence to obtain a conviction under § 922(g)(1). *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014); *Arnold*, 486 F.3d at 181. Clements adds that no reasonable juror could tell who owned the gun with so much clutter surrounding it. But it was his things that created the clutter and thus his things that helped to connect him to the gun. With or without Betty's statements, the record strongly supports Clements' conviction. Any alleged error thus did not affect his substantial rights.

*Motion for Acquittal.* Clements' next challenge stems from the following series of events: His counsel filed an unlabeled motion, apparently one designed to move for acquittal under Criminal Rule 29. The judge overruled it, concluding that "there is evidence on every count" that, "if believed[,] . . . could prove the defendant's guilt beyond a reasonable doubt." R. 58 at 57. Clements objects that the district court never gave him an opportunity for oral argument on the unlabeled motion.

We need not take a position on the point. Any error on that front would be harmless if the record contained sufficient evidence to send the case to the jury. *See United States v. Reifsteck*, 841 F.2d 701, 703–04 (6th Cir. 1988). It did. As noted, the record contains ample evidence in support of Clements' conviction for the gun at Nursery Avenue and the ammunition at 57th Street. Any error in denying the request for oral argument, if error there was, was harmless.

*Cumulative Error.* Even if each of the above errors was harmless on its own, Clements claims that the combined effect of them made his trial fundamentally unfair. *See United States v. Adams*, 722 F.3d 788, 832 (6th Cir. 2013). Even if we accept the premise of this argument—that the court erroneously admitted each of these items of evidence—that does not take Clements where he wishes to go. The amount of unchallenged evidence admitted against Clements undercuts and in the end defeats this argument.

### III.

Clements separately claims that his 275-month sentence is substantively unreasonable because the court placed too much weight on his criminal history and too little on the seriousness of the offense or the need for deterrence. 18 U.S.C. § 3553(a)(1), (2)(A), (2)(B); *see United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). On appeal, a within-guidelines sentence receives a presumption of reasonableness. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008).

Clements has not overcome the presumption. The trial court, it is true, does not mention the seriousness of the crime or deterrence by name. But "it [is] not incumbent on the District Judge to raise every conceivably relevant issue on his own initiative" at sentencing, *Gall v. United States*, 552 U.S. 38, 54 (2007), particularly where the defendant did not even raise one of

the factors (deterrence). While Clements' criminal history no doubt was front and center at the hearing, there was a good reason: That's what the government focused on. And the length of Clements' criminal past deserved the attention it received. "[A] district court does not commit reversible error simply by attaching great weight to a single factor" that fairly bears on a sentence. *United States v. Zobel*, 696 F.3d 558, 571 (6th Cir. 2012) (internal quotation marks omitted). We routinely have refused to second-guess a district court's sentencing judgment simply because it emphasized a defendant's lengthy and serious criminal history. *See, e.g.*, *United States v. Peake-Wright*, 567 F. App'x 355, 357–58 (6th Cir. 2014); *United States v. Griffin*, 562 F. App'x 507, 513–14 (6th Cir. 2014). We decline to do so here.

IV.

For these reasons, we affirm.