NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0058n.06

No. 25-3640

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jan 28, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| RAYMONE F. CLEMENTS, | ) | |
|     Defendant-Appellant. | ) | |
| | ) | OPINION |

_____

Before: DAVIS, RITZ, and HERMANDORFER, Circuit Judges.

HERMANDORFER, Circuit Judge. After Raymone Clements engaged in criminal conduct while on supervised release, the district court revoked that release and sentenced him to six months' imprisonment. Clements challenges that sentence as procedurally unreasonable. We disagree and affirm.

I

Clements is no stranger to the criminal-justice system. By the time he turned 18, Clements had amassed 16 juvenile convictions in Ohio. *United States v. Clements*, 590 F. App'x 446, 447 (6th Cir. 2014). And that pace didn't slow once he reached adulthood. Clements gathered at least another 15 Ohio felony convictions to his name—including for aggravated robbery, receiving stolen property, forgery, drug trafficking, drug possession, and the rape of two underage girls.

Eventually, in 2013, Clements's conduct led to two federal firearms convictions. The district court ultimately sentenced Clements to a term of 120 months' imprisonment followed by three years of supervised release. That supervised release turned on Clements's compliance with multiple conditions—including that Clements "not commit another federal, state or local crime" or "unlawfully possess a controlled substance." Am. J., R.101, PageID 1231.

Later, during the COVID-19 pandemic, Clements moved for compassionate release from federal incarceration under 18 U.S.C. § 3582(c)(1)(A). He cited a bevy of health issues—including diabetes, asthma, lung disease, morbid obesity, hypertension, and high cholesterol—that he believed justified early release. In July 2020, the district court granted the release motion but extended Clements's term of supervised release to five years and ten months.

Clements couldn't stay out of trouble while on supervised release. In 2024, he incurred two more state-law convictions in Ohio. The first offense involved drugs. In late 2022, police found a plastic bag of cocaine on Clements and discovered multiple razor blades and a digital scale in his car. For that crime, Clements was convicted of attempted drug possession, a misdemeanor, and sentenced to time served. The second offense involved stalking and harassment. In April 2024, Clements followed a woman to her boyfriend's house, photographed her car, and sent her threatening texts. Around the time Clements sent his threats, the victim's car caught fire. Clements was convicted that same year of menacing by stalking, another misdemeanor, and sentenced to 90 days in jail. Eventually, after serving more time in Ohio prison for the revocation of his state parole, Clements was released on July 3, 2025.

Upon Clements's release from state prison, the district court ordered him to answer for his federal supervised-release violations. At the hearing, Clements admitted to the two state-law convictions. He also agreed that the United States Sentencing Guidelines range for his supervised-

2

release violations was 8 to 14 months. But he disagreed with the Government about whether the district court should revoke or extend his supervised release.

Clements asked the district court "to not sentence" him "to any additional time" for his violations. Hr'g Tr., R.134, PageID 1365. As an initial matter, Clements argued that he had just finished "serving" approximately 14 months in state jail for "the exact same conduct" at issue in the federal proceedings. *Id.* at PageID 1365-66, 1369. In his view, that time spent in state custody ensured he wouldn't "get off scot-free" if the district court opted against additional incarceration. *Id.* at PageID 1369. On that point, the district court questioned, "[t]he [sentencing] guidelines say that if you commit an offense while on supervision, any sentence . . . shall be served consecutively, doesn't it?" *Id.* Clements's counsel admitted that the Sentencing Guidelines "recommended that the revocation sentence be served consecutive to the sentence that's imposed on [the] new law violation," but he stressed, "it is recommended again just advisory." *Id.* at PageID 1369-70. "No," the district court pushed back, the Sentencing Guidelines "say[] 'shall.'" *Id.* at PageID 1370. Clements ceded that "the guidelines say[] 'shall,'" before reminding the district court that "the guideline is advisory." *Id.* "Well, exactly," the district court agreed, before continuing, "I mean, I have discretion. I understand." *Id.*

Clements also cited his "significant health issues." *Id.* at PageID 1366. He suffered from a "whole list of active problems"—many of which were the same ones that afforded him compassionate release during the COVID-19 pandemic—like "diabetes, diabetic ulcer, obesity," "pulmonary embolism," "asthma," and reduced "mobility." *Id.* at PageID 1367-69. That slew of medical conditions and "upcoming" appointments, Clements advocated, also tilted the scale toward no "custodial imprisonment term." *Id.* at PageID 1367, 1369.

The Government's counter was twofold. It first observed that Clements's laundry list of health issues did not "seem to preclude him" from committing crimes while on supervised release. *Id.* at PageID 1372. Indeed, Clements had suffered from many of the "same health conditions" when he "committed the original" weapons offenses in 2013. *Id.* The Government also pointed out that part of the 14 months Clements spent in Ohio prison had nothing to do with his two new state-law offenses. Instead, his state parole had been revoked after he had contact with a minor, which violated the parole conditions imposed for his sex offenses.

The district court revoked Clements's supervised release and sentenced him to a below-Guidelines sentence of six months. The court acknowledged that Clements "did a lot of time with [Ohio's] Adult Parole Authority." *Id.* at PageID 1383. And it also recognized the "legitimacy" of Clements's "health issues." *Id.* at PageID 1384. On the other hand, the district court stressed, it had a "responsibility to keep the public safe." *Id.* Clements had "a lifetime of crime, and a lot of bad crime." *Id.* at PageID 1383-84. On top of that—no matter his "physical issues"—Clements "continue[d] to do what" he wasn't "supposed to do." *Id.* at PageID 1384. In short, Clements's health problems hadn't "stopped" him "from committing crimes." *Id.* For those reasons, the district court believed it needed to "take" Clements "out of circulation." *Id.* It revoked Clements's supervised release and sentenced him to a "term of 6 months with no supervision to follow." *Id.* Upon release, the court stated, it was "up to [Clements] to decide what" to do "with [his] life." *Id.*

Clements appealed, and we have jurisdiction. *See* 28 U.S.C. § 1291.

II

When criminal defendants commit new crimes during a period of supervised release, district courts have discretion to revoke that release and impose a sentence of imprisonment. 18 U.S.C. § 3583(e)(3). That discretion, however, is not limitless. Instead, a district court must

consider certain factors listed in 18 U.S.C. § 3553(a), one of which is any applicable policy statement found in the Sentencing Guidelines. *See* 18 U.S.C. §§ 3583(e), 3553(a)(4)(B); *Esteras v. United States*, 606 U.S. 185, 188 (2025).

The relevant policy statement here—found in section 7B1.3(f)—advises district courts to "order[]" that any "term of imprisonment" imposed following a supervised-release violation be "served consecutively to any sentence of imprisonment that the defendant is serving." The revocation of supervised release sanctions a defendant's "'breach of the court's trust' when permitting the defendant's release from prison." *United States v. Hinojosa*, 67 F.4th 334, 347 (6th Cir. 2023) (citation omitted); *accord* U.S.S.G. ch. 7, pt. A, introductory cmt. 3(b). By contrast, "the punishment for any new criminal conduct" is left to "the court responsible for imposing the sentence" for that offense. *United States v. Wheeler*, 330 F.3d 407, 412 (6th Cir. 2003) (citation omitted). As a result, "a releasee's new crimes often lead to *both* fresh charges and a supervised-release revocation." *United States v. Robinson*, 63 F.4th 530, 537 (6th Cir. 2023).

On appeal, Clements urges that the district court's action to revoke his supervised release and impose a below-Guidelines sentence of six months was procedurally unreasonable. Procedural reasonableness "focuses on the method the district court uses to arrive at the length of a sentence." *United States v. Gardner*, 32 F.4th 504, 529 (6th Cir. 2022). To determine whether a sentence is procedurally reasonable, we consider whether the district court "properly calculated the guidelines range, treated that range as advisory, considered the sentencing factors in 18 U.S.C. § 3553(a), refrained from considering impermissible factors, selected the sentence based on facts that are not clearly erroneous, and adequately explained why it chose the sentence." *United States v. Roper*, 161 F.4th 430, 434 (6th Cir. 2025) (citation omitted). Because the district court failed to ask Clements if he had any objections to his sentence, *see United States v. Bostic*, 371 F.3d 865, 872-

73 (6th Cir. 2004), both sides agree that we review his challenge for abuse of discretion, *see Roper*, 161 F.4th at 434.

Clements's six-month sentence readily passes procedural-reasonableness muster. Consider how the district court confronted and satisfied the relevant sentencing rules. First, the district court properly calculated the Guidelines range: At the hearing, Clements and the district court agreed that his state misdemeanor charges qualified as Grade C violations that, when combined with his uncontested criminal history category of VI, produced a Guidelines range of 8 to 14 months. *See* U.S.S.G. §§ 7B1.1(a)(3), 7B1.4(a). Second, the district court properly treated that range as advisory: It affirmed that it "ha[d] discretion" before sentencing Clements to a below-Guidelines sentence of six months. Hr'g Tr., R.134, PageID 1370. Third, the district court considered the relevant sentencing factors and refrained from considering impermissible factors: It walked through the applicable considerations—including the nature and circumstances of the offense, the history and characteristics of the defendant, deterrence, protecting the public, the availability of medical care, the applicable sentencing range, and the pertinent policy statement in the Sentencing Guidelines. *See* 18 U.S.C. §§ 3583(e), 3553(a). And fourth, the district court adequately explained why it chose the sentence: It specified that it was imposing the six-month sentence because Clements's health issues—which had existed since 2013, when he was first federally sentenced—did not stop him from committing new crimes, and it was the district court's "responsibility to keep the public safe." Hr'g Tr., R.134, PageID 1384.

Against this straightforward conclusion, Clements provides four counters. None succeeds.

The main thrust of Clements's first argument revolves around section 7B1.3 of the Sentencing Guidelines. Section 7B1.3(a)(2) explains that a district court may "extend" or "revoke" a term of supervised release when a defendant, like Clements, commits a "Grade C

violation." Section 7B1.3(f) then adds that "[a]ny term of imprisonment imposed upon the revocation" of supervised release "shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving." The accompanying commentary further emphasizes a preference for consecutive sentences. The introduction for section 7B1 explains that "the sanction imposed upon revocation is to be served consecutively to any other term of imprisonment imposed for any criminal conduct that is the basis of the revocation." U.S.S.G. ch. 7, pt. B, introductory cmt. And the Sentencing Commission's application note for section 7B1.3(f) "recommend[s] that any sentence of imprisonment for a criminal offense that is imposed after revocation of probation be run consecutively to any term of imprisonment imposed upon revocation." *Id.* § 7B1.3 cmt. n.3.

Citing sections 7B1.3(a) and (f), Clements posits that the district court "did not recognize it had discretion as to whether to revoke [his] supervised release term." Clements Br. 18. But the record undercuts his position. Recall that at the revocation hearing, Clements argued that any additional sentence was unwarranted because he had already served 14.5 months in state custody "for the exact same conduct." Hr'g Tr., R.134, PageID 1369. In response, the district court pointed out that "[t]he guidelines say that if you commit an offense while on supervision, any sentence . . . shall be served consecutively." *Id.* When Clements later pushed back that "the guideline is advisory," the district court agreed: "Well, exactly. I mean, I have discretion. I understand." *Id.* at PageID 1370. The district court's recognition of its own discretion—considered in the context of a discussion about whether it should revoke or extend Clements's release—directly rebuts his argument that the district court "presumed it must revoke his supervision." Clements Br. 18.

Clements's fallback position—that the "plain text" of section 7B1.3(f) does "not apply"—fares no better. Clements Br. 17. Clements is right that section 7B1.3(f) instructs that "term[s] of imprisonment imposed upon . . . revocation" should be "ordered to be served consecutively to any sentence of imprisonment that the defendant is serving." And we recognize that Clements was not serving a "sentence of imprisonment" at the time of the revocation hearing. But still, the district court did not err when it considered the Guidelines policy statement, as it was required to do by statute. *See* 18 U.S.C. §§ 3583(e), 3553(a)(4)(B), (a)(5). As discussed, section 7B of the Sentencing Guidelines advises district courts to impose consecutive sentences on defendants who commit fresh crimes while on supervised release. U.S.S.G. ch. 7, pt. B, introductory cmt.; *id.* § 7B1.3(f) & cmt. n.3. These instructions clearly applied to Clements. No abuse of discretion occurred.

Switching lanes, Clements next contends that the district court "failed to consider the time" that he "served in state custody on [the] same misdemeanor offenses." Clements Br. 18. The record, once again, belies his assertion. The district court explicitly recognized that Clements "did a lot of time with the [Ohio] Adult Parole Authority," before adding, "but that's their issue." Hr'g Tr., R.134, PageID 1383. Because the revocation of supervised release acts as a sanction for a defendant's "breach of the court's trust," not as a punishment for newly committed crimes, *Hinojosa*, 67 F.4th at 347 (citation omitted), the district court acted within its discretion when it considered, and then rejected, Clements's request for no additional "custodial" time based on his stint in state prison, Hr'g Tr., R.134, PageID 1369.

Finally, Clements claims that the district court's written revocation order "incorrectly identified" one of his new state convictions as a "felon[y] of the fifth degree." Clements Br. 19. But the order correctly states that Clements "was *indicted* on" felony charges for possession of

cocaine and criminal tools. Order, R.128, PageID 1355 (emphasis added). To the extent the order omits that Clements was ultimately convicted of only a misdemeanor crime—attempted drug possession—that omission is harmless. As Clements admitted at the hearing, the district court correctly calculated his Guidelines range of 8 to 14 months, which reflected his state misdemeanor charges and criminal history category of VI. So any alleged typo, error, or inconsistency in the written order had no plausible effect on Clements's sentence. *See United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008) ("[S]entencing error[s]" are "harmless" when "we are certain" they "did not affect the district court's selection of the sentence imposed.") (citation omitted).

* * *

We affirm the judgment of the district court.